OPINION
{¶ 1} Defendant-appellant Gary Scott appeals from his convictions and sentences in the Morgan County Court of Common Pleas on one count of selling marijuana in the vicinity of a juvenile [Count 2], four counts of complicity to sell crack cocaine [Counts 3; 5; 6; 7]; one count of complicity to sell marijuana [Count 4]; one count of complicity to sell cocaine in the vicinity of a juvenile [ Amended Count 8]; one count of trafficking in marijuana in the presence of a minor [Count 9]; one count of possession of cocaine [Count 10] and one count of engaging in a pattern of corrupt activity [Count 11]. Plaintiff-appellee is the State of Ohio.
 Statement of the Facts and Case {¶ 2} Between June 6, 2003 and November 23, 2004, the Morgan County Sheriff's Department conducted an undercover drug trafficking investigation of the appellant, his wife Angela Scott, and two accomplices, Christopher Mayle and Jamie Potts.
 {¶ 3} On June 6, 2003 Deputy Tom Jenkins of the Morgan County Sheriff's Department received information from a Washington County detective that a confidential informant had purchased crack cocaine at the residence of the appellant, Gary Scott, and his wife, Angie. The confidential informant was sent to the Scott home, wearing a wire. According to Deputy Jenkins' interpretation of a conversation between Angie Scott and the confidential informant, someone named "buddy" [sic] was on his way to pick up some crack cocaine at a different location. What Ms. Scott actually said, was that "buddy" was on his way to pick up some "shit." On the basis of that conversation, Morgan County Sheriff's deputies obtained a warrant. The warrant was never served.
 {¶ 4} A warrant to search appellant's home was served on November 7, 2003, and $250.00 cash was taken from Chris Mayle, a co-defendant of appellant, and the only person present at the time of the search. The appellant was not present during the search. However, a number of items were seized from the home including cash, guns, jewelry, clothing and ashtrays. Among the items was a small quantity of marijuana, secreted in a box. The amount of marijuana seized was 44.53 grams, or slightly more than an ounce. This marijuana was found in a bedroom, and additional marijuana was found on the person of Christopher Mayle. No fingerprints were taken from the box. This evidence forms the basis for count one of the indictment, trafficking in marijuana, preparing for shipment or distribution, for which the appellant was acquitted.
 {¶ 5} Amy Nelson, who was working for the Morgan County Sheriff's Department as a confidential informant, testified that on or about March 27-28, 2004, she went to appellant's home to purchase marijuana. (T. at 375). On that date, appellant told her he didn't have any at the moment, but she should come back in a couple of days. (Id. at 375-76). Ms. Nelson returned to appellant's home on March 31, 2004 and asked if appellant was home. (Id. at 377-78). While waiting for appellant to come to the door, Ms. Nelson observed a 3 or 4 year old child in the home. (Id.). When appellant came to the door, Ms. Nelson asked him if she could purchase some marijuana. (Id. at 378-379). Ms. Nelson watched as appellant walked to a couch where she could see three bags of marijuana. (Id.). Appellant retrieved one of the bags and handed it to Ms. Nelson. (Id. at 379-380). Ms. Nelson gave the appellant $10.00 and left the residence. (Id.). This "buy" forms the basis for count 2 of the indictment, selling a controlled substance in the vicinity of a juvenile.
 {¶ 6} On April 15, 2004, the same confidential informant returned to the Scott residence and made two separate buys from Christopher Mayle. In the first instance, the informant bought marijuana and cocaine from Mr. Mayle. In the second, she bought crack cocaine from him. Neither the appellant nor his wife was present at the time. These "buys" form the basis for counts three, four and five of the indictment, complicity to sell crack cocaine, complicity to sell marijuana, and complicity to sell crack cocaine, respectively.
 {¶ 7} On May 30, 2004 the same confidential informant bought crack cocaine from Jamie Potts at the Scott's residence. This "buy" forms the basis for count six of the indictment, complicity to sell crack cocaine.
 {¶ 8} According to the confidential informant, Mayle and Potts sold these drugs from the Scott residence, but she did not see where Mayle went to get them within the house, and Potts went somewhere outside the house to retrieve the crack cocaine he sold her. According to the confidential informant, "Chris was just always there [at the Scott's residence], it was like he lived there." Although the informant had bought illegal drugs from Mr. Mayle on several occasions, the only time she purchased drugs from Gary Scott was on March 31, 2004, a small quantity of marijuana.
 {¶ 9} In November, 2004, a second informant purchased cocaine from Mr. Mayle at the Scott residence. This "buy" forms the basis for count seven of the indictment, complicity to sell crack cocaine.
 {¶ 10} Based upon this "buy" Deputy Tom Jenkins obtained a second warrant to search the Scott's home. They retrieved cash from the appellant and his wife, a bank card, some marijuana from Christopher Mayle, and some other items suspected of being cocaine. The warrant was served on November 23, 2004. These transactions formed the basis for counts eight, nine and ten of the indictment. Count eight was amended during trial from the sale of crack cocaine in the presence of a minor to the sale of cocaine in the presence of a minor. Count nine charged trafficking in marijuana in the presence of a minor and count ten charged possession of cocaine.
 {¶ 11} Count eleven of the indictment alleged a pattern of corrupt activity. The drug buy that formed the second count of the indictment on March 31, 2004 amounted to $10.00. The buys that occurred on April 15, 2004 totaled $90.00. The buy on May 30, 2004 totaled $150.00 and the final buy totaled $200.00. The aggregate amount of the sales was $450.00.
 {¶ 12} Appellant was subsequently indicted, along with his wife and co-defendant Christopher Mayle, in an eleven count Indictment charging him with possession, trafficking, and complicity to trafficking in illegal drugs, including marijuana, cocaine and crack cocaine. Additionally he was charged with one count of engaging in a pattern of corrupt activity for operating an illegal drug trafficking enterprise from his residence.
 {¶ 13} A jury trial commenced on September 29, 2005 which concluded on September 30, 2005. At the conclusion of the trial, the jury found the appellant not guilty of trafficking in marijuana as charged in count one of the Indictment, guilty of complicity to trafficking in marijuana in the vicinity of a juvenile as charged in count two of the Indictment, guilty of complicity to trafficking in crack cocaine as charged in count three of the Indictment, guilty of complicity to trafficking in marijuana as charged in count four of the Indictment and guilty of complicity to trafficking in crack cocaine as charged in count five of the Indictment, guilty of trafficking in crack cocaine and in the vicinity of a Juvenile as charged in count six of the Indictment, guilty of complicity to trafficking in crack cocaine and in the vicinity of a Juvenile as charged in count seven of the Indictment, not guilty of trafficking in cocaine as charged in count eight of the Indictment, guilty of trafficking in marijuana and in the vicinity of a Juvenile as charged in count nine of the Indictment, guilty of possession of cocaine as charged in count ten of the Indictment and guilty of engaging in a pattern of corrupt activity as charged in count eleven of the Indictment. The jury further found a number of seized items subject to forfeiture, as well as finding that some items were not subject to forfeiture.
 {¶ 14} This matter came before the court for sentencing on January 3, 2006. After conducting the sentencing hearing and considering the information contained in the pre-sentence investigative report as well as the sentencing memorandum filed by appellant's counsel and based upon statements presented by the Assistant Prosecuting Attorney and Defense counsel and appellant, the Court sentenced the appellant as follows: a twelve month prison term and fine of $2,500.00 for appellant's conviction to complicity to trafficking in marijuana as charged in count two of the Indictment; eleven months in prison and a $2,500.00 fine for his conviction to complicity to trafficking in cocaine a felony of the fifth degree as charged in count three of the Indictment; eleven months in prison and a $2,500.00 fine for appellant's conviction to complicity to trafficking in marijuana, a felony of the fifth degree as charged in count four of the Indictment; an eleven month prison term and fine of $2,500.00 for appellant's conviction to complicity to trafficking in crack cocaine, a felony of the fifth degree as charged in count five of the Indictment; three years in prison and a $5,000.00 fine for appellant's conviction to complicity to trafficking in crack cocaine, a felony of the third degree as charged in count six of the Indictment; a three year prison term and $5,000.00 fine for appellant's conviction to complicity to trafficking in crack cocaine, a felony of the third degree as charged in count seven of the Indictment; twelve month prison term and $2,500.00 fine for appellant's conviction to trafficking in marijuana, a felony of fourth degree as charged in count nine of the Indictment; an eleven month prison term and $1,500.00 fine for appellant's conviction to possession of cocaine, a felony' of the fifth degree as charged in count ten of the Indictment; and an eight year prison term and $10,000.00 fine for appellant's conviction to engaging in a pattern of corrupt activity, a felony of the first degree as charged in count eleven of the Indictment.
 {¶ 15} The Court further ordered that the sentences as imposed for counts three, four and five of the Indictment were to be served concurrent with one another and that appellant's sentences in counts nine and ten would be served concurrent with one another, and that all other counts shall be served consecutive to one another. The Court then noted that the total sentence imposed upon the appellant was sixteen years and eleven months in prison and fines totaling $27,500.00. In addition the Court further ordered the appellant to pay Court costs as well as imposing a driver's license suspension of five years and ordered various amounts of property forfeited as found by the jury.
 {¶ 16} Appellant timely filed his Notice of Appeal raising the following six assignments of error for consideration:
 {¶ 17} "I. THERE WAS INSUFFICIENT EVIDENCE UPON WHICH A JURY COULD HAVE CONVICTED THE DEFENDANT.
 {¶ 18} "II. THE JURY'S VERDICT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 19} "III. THE SENTENCE IMPOSED BY THE TRIAL COURT VIOLATES THESIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION, PURSUANT TO THE OHIO SUPREME COURT'S HOLDINGS IN STATE V. FOSTER, ET AL. (2006), 109 OHIO ST.3D 1[sic.], 2006 OHIO 856, 845 N.E.2D 470.
 {¶ 20} "IV. THE TRIAL COURT'S SENTENCE VIOLATES THE DICTATE OF OHIO REVISED CODE SECTION 2929.11 THAT FELONY SENTENCES BE CONSISTENT WITH SENTENCES IMPOSED FOR SIMILAR CRIMES BY SIMILAR OFFENDERS AND THAT SENTENCES NOT BE BASED ON RACE.
 {¶ 21} "V. THE TRIAL COURT'S SENTENCE VIOLATED THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND SECTION I ARTICLE 2 OF THE OHIO CONSTITUTION.
 {¶ 22} "VI. THE SENTENCE IMPOSED BY THE TRIAL COURT VIOLATES THE APPELLANT'S RIGHT TO SUBSTANTIVE DUE PROCESS PURSUANT TO BOTH THE OHIO AND FEDERAL CONSTITUTIONS."
 I. II. {¶ 23} In his first assignment of error, appellant maintains that his convictions are against the sufficiency of the evidence. In his second assignment of error appellant maintains that his convictions are against the manifest weight of the evidence. We disagree.
 {¶ 24} The Supreme Court has explained the distinction between claims of sufficiency of the evidence and manifest weight.
 {¶ 25} Sufficiency of the evidence is a question of law for the trial court to determine whether the State has met its burden to produce evidence on each element of the crime charged, sufficient for the matter to be submitted to the jury. A claim that evidence is insufficient to support a conviction as a matter of due process depends on "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt ." Jackson v.Virginia (1979),443 U.S.307, 319, 99 S.Ct.2781, 2789. (Emphasis in original).
 {¶ 26} Manifest weight of the evidence claims concern the amount of evidence offered in support of one side of the case, and is a jury question. We must determine whether the jury, in interpreting the facts, so lost its way that its verdict results in a manifest miscarriage of justice, State v. Thompkins (1997), 78 Ohio St. 3d 387, citations omitted. On review for manifest weight, a reviewing court is "to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment." State v. Thompkins, 78 Ohio St.3d 380,387, 1997-Ohio-52, citing State v. Martin (1983), 20 Ohio App.3d 172,175. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, syllabus 1.
 {¶ 27} "Because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency." State v.Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462. Thus, a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency.Cuyahoga Falls v. Scupholm (Dec. 13, 2000), 9th Dist. Nos. 19734 and 19735; State v. Worthington, 5th Dist. No. 2004-CA-0083,2005-Ohio-4719 at ¶ 103.
 {¶ 28} In State v. Thompkins (1997), 78 Ohio St.3d 380,678 N.E.2d 541, the Ohio Supreme Court held "[t]o reverse a judgment of a trial court on the basis that the judgment is not sustained by sufficient evidence, only a concurring majority of a panel of a court of appeals reviewing the judgment is necessary." Id., paragraph three of the syllabus. However, to "reverse a judgment of a trial court on the weight of the evidence, when the judgment results from a trial by jury, a unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required." Id., paragraph four of the syllabus;State v. Miller (2002), 96 Ohio St.3d 384, 2002-Ohio4931 at ¶ 38,775 N.E.2d 498.
 {¶ 29} In the case at bar, appellant was convicted of one count of selling marijuana in the vicinity of a juvenile[Count 2], complicity to sell crack cocaine x 4 [Counts 3; 5; 6; 7]; complicity to sell marijuana [Count 4]; complicity to sell cocaine in the vicinity of a juvenile [ Amended Count 8]; trafficking in marijuana in the presence of a minor [Count 9]; possession of cocaine [Count 10] and engaging in a pattern of corrupt activity [Count 11].
 {¶ 30} Sale of, and trafficking in, a controlled substance is controlled by R.C. 2925.03(A). Said section states: "(A) No person shall knowingly do any of the following: (1) Sell or offer to sell a controlled substance." Appellant was also convicted of possession of a controlled substance in violation of R.C. 2925.11(A), which states: "(A) No person shall knowingly obtain, possess, or use a controlled substance."
 {¶ 31} The culpable mental state of "knowingly" is defined as follows: "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).
 {¶ 32} Appellant's argument centers upon the fact that he was not present when his co-defendant's sold the drugs. However, appellant was charged with complicity in those sales.
 {¶ 33} R.C. 2923.03 provides:
 {¶ 34} "(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following: "* * *
 {¶ 35} "(2) Aid or abet another in committing the offense."
 {¶ 36} R.C. 2923.03(F) states "A charge of complicity may be stated in terms of this section, or in terms of the principal offense."
 {¶ 37} "The Supreme Court of Ohio clarified Ohio's position on the issue of complicity in State v. Perryman (1976), 49 Ohio St. 2d 14, vacated in part on other grounds sub nom, Perryman v. Ohio (1978),438 U.S. 911. The court unequivocally approved of the practice of charging a jury regarding aiding and abetting even if the defendant was charged in the indictment as a principal. Id. The court held that the indictment as principal performed the function of giving legal notice of the charge to the defendant. Id. Therefore, if the facts at trial reasonably supported the jury instruction on aiding and abetting, it is proper for the trial judge to give that charge. Perryman, supra at 27, 28." State v.Payton (April 19, 1990), 8th Dist. Nos. 58292, 58346. In the case at bar, the indictment charged appellant in terms of the principle offense and in terms of aiding and abetting.
 {¶ 38} Appellant argues that his co-defendants Christopher Mayle and Jamie Potts sold the drugs, and conducted the drug selling operation and that he, appellant, knew nothing about their activities.
 {¶ 39} Generally, a criminal defendant has aided or abetted an offense if he has supported, assisted, encouraged, cooperated with, advised, or incited another person to commit the offense. See State v. Johnson
(2001), 93 Ohio St.3d 240, 754 N.E.2d 796, syllabus. "`Participation in criminal intent may be inferred from presence, companionship and conduct before and after the offense is committed.' " State v. Mendoza (2000),137 Ohio App.3d 336, 342, 738 N.E.2d 822, quoting State v. Stepp (1997),117 Ohio App.3d 561, 568-569, 690 N.E.2d 1342.
 {¶ 40} R.C. 2925.01(K) defines possession as follows: " `Possess' or `possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2901.21 provides the requirements for criminal liability and provides that possession is a "voluntary act if the possessor knowingly procured or received the thing possessed, or was aware of the possessor's control of the thing possessed for sufficient time to have ended possession." R.C. 2901.21(D) (1).
 {¶ 41} Possession may be actual or constructive. State v. Haynes
(1971), 25 Ohio St.2d 264, 267 N.E.2d 787; State v. Hankerson (1982),70 Ohio St.2d 87, 434 N.E.2d 1362, syllabus. To establish constructive possession, the evidence must prove that the defendant was able to exercise dominion and control over the contraband. State v. Wolery
(1976), 46 Ohio St.2d 316, 332, 348 N.E.2d 351. Dominion and control may be proven by circumstantial evidence alone. State v. Trembly,137 Ohio App.3d 134, 738 N.E.2d 93. Circumstantial evidence that the defendant was located in very close proximity to readily usable drugs may show constructive possession. State v. Barr (1993), 86 Ohio App.3d 227, 235,620 N.E.2d 242, 247-248; State v. Morales, 5th Dist. No. 2004 CA 68, 2005-Ohio-4714 at ¶ 50; State v. Moses, 5th Dist. No. 2003CA00384, 2004-Ohio-4943 at ¶ 9. Ownership of the drugs need not be established for constructive possession. State v. Smith, 9th Dist. No. 20885, 2002-Ohio-3034, at ¶ 13, citing State v. Mann, (1993) 93 Ohio App.3d 301, 308,638 N.E.2d 585. Furthermore, possession may be individual or joint.Wolery, 46 Ohio St.2d at 332, 348 N.E.2d 351.
 {¶ 42} If the State relies on circumstantial evidence to prove an essential element of an offense, it is not necessary for "`such evidence to be irreconcilable with any reasonable theory of innocence in order to support a conviction." ` State v. Jenks (1991), 61 Ohio St.3d 259, 272,574 N.E.2d 492 at paragraph one of the syllabus. "`Circumstantial evidence and direct evidence inherently possess the same probative value [.]" ` Jenks, 61 Ohio St.3d at paragraph one of the syllabus. Furthermore, "`[s]ince circumstantial evidence and direct evidence are indistinguishable so far as the jury's fact-finding function is concerned, all that is required of the jury is that i[t] weigh all of the evidence, direct and circumstantial, against the standard of proof beyond a reasonable doubt." ` Jenks, 61 Ohio St.3d at 272,574 N.E.2d 492. While inferences cannot be based on inferences, a number of conclusions can result from the same set of facts. State v. Lott (1990),51 Ohio St.3d 160, 168, 555 N.E.2d 293, citing Hurt v. Charles J. RogersTransp. Co. (1955), 164 Ohio St. 329, 331, 130 N.E.2d 820. Moreover, a series of facts and circumstances can be employed by a jury as the basis for its ultimate conclusions in a case. Lott, 51 Ohio St.3d at 168,555 N.E.2d 293, citing Hurt, 164 Ohio St. at 331, 130 N.E.2d 820.
 {¶ 43} In the case at bar, the evidence presented at trial established that on November 7, 2003, the Morgan County Sheriff Department obtained a warrant to search the appellant's residence. (T. at 162-163; 248). During the search, the officers recovered the following: "Item number two was a Winchester model 70 with a 7 mm with a scope it was located in the bedroom. Number three Remington model 1100 12 gauge was located in the bedroom. Item four was a Mossberg located in the bedroom. Five was a Glenfield 60 22 caliber located in the bedroom. Number six was Remington model 1100 LT 20 gauge in the bedroom. Number seven was a Crickett 22 located in the bedroom. Number eight was $108 in cash from the armoire in the bedroom, number nine was a bag of marijuana in the armoire in the bedroom, number ten was $105 in cash also located in the bedroom, number eleven was $4300 in cash and a (inaudible) found under the bed, number twelve was $3,200 in cash in a pair of pants pocket found under the bed, number thirteen was a pair of pledge I think he meant pants with this money located in them, number fourteen was a shoe box with marijuana a bag of marijuana in it, number fifteen was a KBI Model 5MC caliber pistol located in the living room, number sixteen was a box of glad sandwich bags in the master bedroom, number seventeen was a wooden box with two watches and a bracelet and a bottle of (inaudible) located in the master bedroom, number eighteen was a bag of change located in the bedroom, number nineteen was income tax returns and sales receipts located in the master bedroom, number twenty was a (inaudible) miscellaneous papers in a blue box and miscellaneous papers in the living room right beside the door, number twenty-one was (inaudible) with stereos and miscellaneous shelves located in the bedroom no I mean living room, number twenty-two was a Sheriff's t-shirts and south pole shirts and they both had security tags on them where they hadn't been taken off at the store, number twenty-three was an ashtray of a 70's model vehicle, number twentyfour was the ashtray of a blue Olds Cutlass and two things of change, number twentyfive was two vehicle's we seized at the residence, number twenty-six was a compact computer that was taken out of the living room." (T. at 256-257).
 {¶ 44} The bedroom in which the items were seized belongs to appellant and his wife. (T. at 259). Marijuana and plastic sandwich bags were found in plain view in the master bedroom. (Id. at 260-62). A pair of pants with $7,500.00 in the pocket was found underneath the bed in the master bedroom. (Id. at 262-263). Appellant and his wife's tax returns were also seized. (Id. at 264). Those records indicate that the couple's income for the year 2000 was $12, 423.00; for the year 2001 their income was listed as $3,355.00 and for the year 2002 the couple's income was listed on the tax return as $3,128.00. (Id. at 265).
 {¶ 45} The testimony during trial established that the master bedroom was secured by a deadbolt lock that required a key to enter. (Id. at 270). Upon inquiry by the officers conducting the search, Mr. Mayle informed them that the room was appellant and his wife's and they had the key needed to enter the bedroom. (Id. at 274).
 {¶ 46} In the case at bar, Amy Nelson, who was working for the Morgan County Sheriff's Department as a confidential informant, testified that on or about March 27-28, 2004, she went to appellant's home to purchase marijuana. (T. at 375). On that date, appellant told her he didn't have any at the moment, but she should come back in a couple of days. (Id. at 375-76). Ms. Nelson returned to appellant's home on March 31, 2004 and asked if appellant was home. (Id. at 377-78). While waiting for appellant to come to the door, Ms. Nelson observed a 3 or 4 year old child in the home. (Id.). When appellant came to the door, Ms. Nelson asked him if she could purchase some marijuana. (Id. at 378-379). Ms. Nelson watched as appellant walked to a couch where she could see three bags of marijuana. (Id.). Appellant retrieved one of the bags and handed it to Ms. Nelson. (Id. at 379-380). Ms. Nelson gave the appellant $10.00 and left the residence. (Id.).
 {¶ 47} On November 22, 2004 a second warrant was issued to search appellant's residence. (T. at 456-458). Appellant, his wife, Christopher Mayle and appellant's 18-year old daughter were present at the time of the search. (Id. at 461).
 {¶ 48} A pill bottle wrapped in blank tape, a baggy of white powder and a baggie of a white rock substance were recovered from Mrs. Scott's pocket. (Id. at 461). Suspected crack cocaine residue was also found in the purse belonging to appellant's daughter. (Id.).
 {¶ 49} Also recovered during the search was the following: "Number six was a riffle [sic.] with a scope 22/250 on the living room couch. Number seven was a shoe box with change, pills, money wrappers it was right beside the bedroom, the master bedroom door on the floor. Number eight was marijuana gotten out of the armoire in the master bedroom. Number nine was two plastic bags with two baggy's [sic.] of marijuana seeds in the armoire master the bedroom. Number ten was cellophane wrapper containing a white substance at the end of the bed with a white rock substance believed to be crack cocaine. Number eleven was a bag of keys two bank keys for a safety deposit box located in Angie's purse in the master bedroom. Number twelve was an envelope containing $356.00 cash out of Angie's purse in the bedroom. Number thirteen was a baggy of white rock residue located on the head of the bed. Number fourteen was a baggy of marijuana, suspected marijuana, located on the head of the bed. Number fifteen was $56.00 in cash on the head of the bed. Number sixteen was an ashtray with roaches presumed marijuana roaches on the head of the bed. Number seventeen was a baggy with white and orange pills on the head of the bed. Number eighteen was a plastic [sic.] with one bottle with several different pills on the head of the bed. Number nineteen was a muzzle loader 50 caliber muzzle loader in the corner of the bedroom. Number twenty was another muzzle loader and it didn't have a caliber on it. Number twenty-one was a Remy arms lever action 22-caliber was in the corner of the bedroom. Number twenty-two Mossberg 410 and it was in the corner of the bedroom. Number twenty-three was a Marlin model 60 22-caliber it was in the corner of the bedroom. Twenty-four was a Mossberg 410-pump in a blue case in the corner of the bedroom. Number five, twenty-five was a JVC video recorder that was beside the bed in the master bedroom. Twenty-six was a plastic bag with a set of micro tech scales that was on the dresser in the master bedroom. Number twenty-seven was a baggy of marijuana seeds behind the armoire in the bedroom. Number twenty-eight was suspected marijuana came out of the top drawer of the dresser in the bedroom. Number twentynine was a smoking bowl, a marijuana smoking bowl in the top of the t.v. [sic.] in the master bedroom. Number thirty was scales and they came from the dresser in the back bedroom beside the other set of scales. Number thirty-one was a Pioneer box t.v. [sic] DVD player it came off the floor in the back bedroom . . . thirty-two is black bags, glad bags and Shur-fine sandwich bags out of the back master bedroom. Number thirty-three was a baggy of blue pills on the end table in the back bedroom. Number thirty-four was a Radio Shack scanner in the back bedroom. Number thirty-five was a Uniden scanner that was in the kitchen. Thirty-six was a realistic [sic.] scanner that was in the kitchen. Number thirty-seven was suspected marijuana that was inside the safe in the bedroom. Number thirty-eight was a white envelope containing $5,000.00 cash . . . (T. at 461-464). The envelope containing $5,000.00 as well as some of the marijuana was retrieved from inside a safe in the master bedroom. (Id. at 464).
 {¶ 50} Viewing this evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that appellant, at the very least, supported, assisted, encouraged, cooperated with, advised, or incited another person to commit the offenses with which he was convicted. Viewing this evidence linking appellant to the bedroom in which the drugs, money and firearms were located on two separate occasions approximately one-year apart in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that appellant had dominion and control over the contraband and was well aware of, and, at the very least, participated in the codefendants' selling of drugs from appellant's home.
 {¶ 51} We hold, therefore, that the State met its burden of production regarding each element of the crimes of selling marijuana in the vicinity of a juvenile[Count 2], complicity to sell crack cocaine x 4 [Counts 3; 5; 6; 7]; complicity to sell marijuana [Count 4]; complicity to sell cocaine in the vicinity of a juvenile [ Amended Count 8]; trafficking in marijuana in the presence of a minor [Count 9]; possession of cocaine [Count 10] and engaging in a pattern of corrupt activity [Count 11].
 {¶ 52} With respect to Count 11 Engaging in a Pattern of Corrupt activity appellant contends that the drug sales proven at trial fall below the jurisdiction amount of $500.00 as set forth in R.C. 2923.32. Specifically, appellant cites to R.C. 2923.32(c), which provides "(c) Any violation of section 2907.21, 2907.22, 2907.31, 2913.02, 2913.11,2913.21, 2913.31, 2913.32, 2913.34, 2913.42, 2913.47, 2913.51, 2915.03, 2925. 03, 2925.04, 2925.05, or 2925.37 of the Revised Code, any violation of section 2925.11 of the Revised Code that is a felony of the first, second, third, or fourth degree and that occurs on or after July 1, 1996, any violation of section 2915.02 of the Revised Code that occurred prior to July 1, 1996, any violation of section 2915.02 of the Revised Code that occurs on or after July 1, 1996, and that, had it occurred prior to that date, would not have been a violation of section3769.11 of the Revised Code as it existed prior to that date, any violation of section 2915.06 of the Revised Code as it existed prior to July 1, 1996, or any violation of division (B) of section 2915.05 of the Revised Code as it exists on and after July 1, 1996, when the proceeds of the violation, the payments made in the violation, the amount of a claim for payment or for any other benefit that is false or deceptive and that is involved in the violation, or the value of the contraband or other property illegally possessed, sold, or purchased in the violation exceeds five hundred dollars, or any combination of violations described in division (I)(2)(c) of this section when the total proceeds of the combination of violations, payments made in the combination of violations, amount of the claims for payment or for other benefits that is false or deceptive and that is involved in the combination of violations, or value of the contraband or other property illegally possessed, sold, or purchased in the combination of violations exceeds five hundred dollars . . ."
 {¶ 53} As evidenced from the clear wording of the statute, "sale", "possession" and "purchase" of contraband are all included to reach the $500.00 threshold. In the case at bar, marijuana, and crack cocaine were found during the execution of the search warrant on November 22, 2004. Evidence was presented as to the street value of both marijuana and crack cocaine. (T. at 496-497). Appellant concedes that the total amount of the sale proceeds in the case at bar is $450.00. Accordingly, the jury could find the amount of drugs possessed by appellant and recovered during the search of his residence exceed $50.00. Therefore, the record contains evidence that $500.00 jurisdictional amount as required by R.C.2923.32 has been met.
 {¶ 54} Although appellant cross-examined the witnesses and argued that he was not present and did not participate in the sale of crack or cocaine, the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. State v. Jamison (1990),49 Ohio St.3d 182, certiorari denied (1990), 498 U.S. 881.
 {¶ 55} Reviewing courts should accord deference to the trial court's decision because the trial court has had the opportunity to observe the witnesses' demeanor, gestures, and voice inflections which cannot be conveyed to us through the written record, Miller v. Miller (1988),37 Ohio St. 3d 71.
 {¶ 56} In Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 81,461 N.E.2d 1273, the Ohio Supreme Court explained: "[a] reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not." See, also State v.DeHass (1967), 10 Ohio St.2d 230, syllabus 1.
 {¶ 57} The jury was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence". State v. Craig (Mar. 23, 2000), Franklin App. No. 99AP-739, citing State v. Nivens (May 28, 1996), Franklin App. No. 95APA09-1236 Indeed, the jurors need not believe all of a witness' testimony, but may accept only portions of it as true. State v. Raver, Franklin App. No. 02AP-604, 2003-Ohio-958, at ¶ 21, citing State v. Antill (1964),176 Ohio St. 61, 67, 197 N.E.2d 548.; State v. Burke, Franklin App. No. 02AP1238, 2003-Ohio-2889, citing State v. Caldwell (1992),79 Ohio App.3d 667, 607 N.E.2d 1096. Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. State v. Jenks (1991),61 Ohio St. 3d 259, 574 N.E. 2d 492.
 {¶ 58} We conclude the trier of fact, in resolving the conflicts in the evidence, did not create a manifest miscarriage of justice so as to require a new trial. Viewing this evidence in a light most favorable to the prosecution, we further conclude that a rational trier of fact could have found beyond a reasonable doubt that appellant was guilty of the crimes of selling marijuana in the vicinity of a juvenile[Count 2], complicity to sell crack cocaine x 4 [Counts 3; 5; 6; 7]; complicity to sell marijuana [Count 4]; complicity to sell cocaine in the vicinity of a juvenile [ Amended Count 8]; trafficking in marijuana in the presence of a minor [Count 9]; possession of cocaine [Count 10] and Engaging in a pattern of corrupt activity [Count 11].
 {¶ 59} Accordingly, appellant's convictions are not against the manifest weight of the evidence.
 III. {¶ 60} In his third assignment of error, appellant argues that the trial court's imposition of maximum and consecutive sentences is unconstitutional pursuant to United States v. Booker
(2005),543 U.S. 220, 125 S.Ct. 738, Blakely v. Washington (2004), 542 U.S. 296,124 S.Ct. 2531, and State v. Foster, 109 Ohio St.3d. 1, 2006-Ohio-856,845 N.E.2d 470. We agree.
 {¶ 61} In Foster the Court found, in relevant part to appellant's assignment of error, the provisions addressing "more than the minimum" sentence for offenders who have not previously served a prison term pursuant to R.C. 2929.14(B) required the sentencing court to make findings beyond those facts found by a jury or admitted by an accused. Id. at ¶ 61.
 {¶ 62} The Court found both provisions to be unconstitutional under the United States Supreme Court decisions in Apprendi v. New Jersey
(2000), 530 U.S. 466, 120 S.Ct.2348, 147 L.Ed.2d 435, and Blakely v.Washington (2004), 542 U.S. 296,124 S.Ct. 2531, 159 L.Ed.2d 403. However, the Ohio Supreme Court in Foster found that the offending provisions of the sentencing law are severable. The Court concluded that after severing those provisions judicial fact-finding is not required before a prison term can be imposed within the basic ranges of R.C.2929.14(A) based upon a jury verdict or admission of the defendant, or before imposition of consecutive prison terms. Id. at paragraphs 2 and 4 of the syllabus.
 {¶ 63} The Court in Foster, supra, provided the following instructions to the lower courts: "[t]hese cases and those pending on direct review must be remanded to trial courts for new sentencing hearings not inconsistent with this opinion. We do not order re-sentencing lightly. Although new sentencing hearings will impose significant time and resource demands on the trial courts within the counties, causing disruption while cases are pending on appeal, we must follow the dictates of the United States Supreme Court. Ohio's felony sentencing code must protect Sixth Amendment principles as they have been articulated.
 {¶ 64} "Under R.C. 2929.19 as it stands without (B) (2), the defendants are entitled to a new sentencing hearing although the parties may stipulate to the sentencing court acting on the record before it. Courts shall consider those portions of the sentencing code that are unaffected by today's decision and impose any sentence within the appropriate felony range. If an offender is sentenced to multiple prison terms, the court is not barred from requiring those terms to be served consecutively. While the defendants may argue for reductions in their sentences, nothing prevents the state from seeking greater penalties.United States v. DiFrancesco (1980), 449 U.S. 117, 134-136,101 S.Ct. 426, 66L.Ed.2d 328". Foster, supra at ¶ 104-105.
 {¶ 65} Before imposing a greater/harsher sentence, the trial courts should be mindful of the restraints set forth in North Carolina v.Pearce (1969), 395 U.S. 711, 89 S.Ct. 2072. As the Pearce decision emphasized "the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal." Id. at 2081.
 {¶ 66} The Ohio Supreme Court has affirmed decisions to remand because of Blakely even though the trial courts in those cases failed to make the statutorily required findings. See In re Ohio Criminal SentencingStatutes Cases, 109 Ohio St.3d 313, 2006-Ohio-2109 (affirming bothState v. Baccus, 1st Dist. No. C-040028, 2005-Ohio3407, and State v.Mason, 8th Dist. No. 84061, 2004-Ohio-5388). We have no discretion to disregard the clear mandate of the Ohio Supreme Court. Dougherty v.Torrence (1984), 10 Ohio St.3d 139, 141.
 {¶ 67} In this case, the trial court followed the dictates of R.C.2929.14(C) and (E) (4) when sentencing appellant. Accordingly, his sentence violated his Sixth Amendment right to a trial by jury and this case must be remanded for re-sentencing pursuant to the Ohio Supreme Court's mandate in Foster.
 IV, V, VI. {¶ 68} In his fourth, fifth and sixth assignments of error appellant maintains that because his sentence is greater than his co-defendant's and because appellant is an African-American and the co-defendant is not, his sentence violates the equal protection and due process clauses of the United State and Ohio Constitutions, and the consistency requirement of R.C. 2929.11.
 {¶ 69} These issues are not ripe for review because appellant has yet to be sentenced under Foster. State v. Walker, Cuyahoga App. No. 87677,2006-Ohio-6188 at ¶ 81; State v. Erwin, Cuyahoga App. No. 87333,2006-Ohio-4498; State v. McCarroll, Cuyahoga App. No. 86901,2006-Ohio-3010; State v. Chambers, Cuyahoga App. No. 87221,2006-Ohio-4889; State v. Rady, Lake App. No. 2006-L-012, 2006-Ohio-3434;State v. Pitts, Allen App. No. 01-06-02, 2006-Ohio-2796; State v.Sanchez, Defiance App. No. 4-05-47, 2006-Ohio-2141. Furthermore, a claim that rests upon future events that may not occur at all, or may not occur as anticipated, is not considered ripe for review. State ex rel.Keller v. Columbus (2005), 164 Ohio App.3d 648, at ¶ 20; State v.Corbin, 3rd Dist. 1-06-23, 2006-Ohio-6092 at ¶ 9.
 {¶ 70} Accordingly, appellant's fourth, fifth and sixth assignments of error are deemed moot.
 {¶ 71} For the foregoing reasons, the sentence of the Court of Common Pleas of Morgan County, Ohio, is hereby affirmed in part, and reversed in part. The sentence is vacated and this matter is remanded to the trial court for re-sentencing in accord with the law and consistent with this opinion. By Gwin, J., Wise, P.J., and Farmer, J., concur
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the sentence of the Court of Common Pleas of Morgan County, Ohio, is hereby affirmed in part, and reversed in part. The sentence is vacated and this matter is remanded to the trial court for re-sentencing in accord with the law and consistent with this opinion. Costs to appellee.