[Cite as *State v. Everett*, 2015-Ohio-5273.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-140275 |
| | | TRIAL NO. B-1203778 |
| Plaintiff-Appellee, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| | | |
| BRIAN EVERETT, | : | |
| | | |
| Defendant-Appellant. | : | |

Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  December 18, 2015

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Scott M. Heenan*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Michael J. Trapp*, for Defendant-Appellant.

Please note:  this case has been removed from the accelerated calendar.

**DEWINE, Judge.**

{¶1}    Brian Everett stabbed to death his friend and her 12-year-old daughter. A jury didn't buy his self-defense argument, and he was convicted of both murders, as well as tampering with the evidence. In this appeal, Mr. Everett claims that the court provided an improper jury instruction on self-defense, that his attorney was ineffective for not objecting to the instruction, that the jury's verdicts with respect to the 12-year-old girl were inconsistent, and that the verdicts were not supported by sufficient evidence and were against the weight of the evidence. We affirm the judgment of the trial court.

## I.  Background

{¶2}    On May 30, 2012, Mr. Everett called 911 to report a stabbing. When police officers responded to his apartment, they discovered the bodies of Nicole Smith and her 12-year-old daughter, Stephanie Smith, covered in blood and lying together near the front door of the apartment. Both had been stabbed. The officers found Everett sitting on a couch in his family room smoking a cigarette. Officer Gary Fangman initially thought Everett was a victim too because he had blood on him. When he asked Everett who had done it, Mr. Everett responded "she came at me with a knife and she got cut." Officer Fangman then advised Everett of his *Miranda* rights and asked about the young girl. Mr. Everett told the officer "she got in the way during the fight and she got cut also."

{¶3}    Detectives Sandy Sieving and Howard Grant were assigned to investigate. Detective Sieving testified about her observations at the scene. Both victims had been stabbed in the back. According to Detective Sieving, Mr. Everett claimed that he had stabbed the victims in self-defense, but in Detective Sieving's opinion, "[b]ased on the amount of the injuries to both of them * * *[,] how he said

2

that these injuries occurred could not have happened." One knife that had been used in the stabbing was found in the kitchen along with a washcloth with Nicole Smith's blood. Detective Sieving surmised that Everett had attempted to wipe the knife clean. A napkin with Everett's blood on it was found in a kitchen drawer. The detectives concluded that Everett had tried to clean the blood up.

{¶4} Dr. Karen Looman, deputy coroner, testified about the injuries sustained by the victims. According to Dr. Looman, the time of death was between 4 and 5 a.m.—over an hour before Everett had called 911. Nicole had a stab wound over her left breast, two stab wounds on her right arm and five stab wounds in her back. She also had defensive wounds on her hand. Dr. Looman testified that the knife wounds in Nicole's back were consistent with someone having stabbed her from behind, as opposed to someone having reached around her. Stephanie had two stab wounds in her chest, one in her back and defensive wounds on her hands. Additionally, Stephanie had indications of asphyxia or deprivation of oxygen.

{¶5} When interviewed by Detectives Grant and Sieving, Mr. Everett continued to maintain that he had acted in self-defense. He said he had invited Nicole and her daughter to stay at his apartment because their electricity had been turned off. After they had gone to bed, Nicole had come to his room asking to have sex. When he turned her down, an argument ensued. During the argument, Mr. Everett told Nicole he would not have sex with her because she had had too many partners. He also informed her that, about a week earlier, he had called 911 to report that she had attacked a man in her neighborhood. As a result of the argument, Nicole got very angry and "turned ashido," eventually grabbing a knife from the kitchen. Mr. Everett described Nicole swinging the knife around, threatening him. Mr. Everett armed himself with a steak knife that was nearby. Mr. Everett explained

3

that he was able to get the knife from Nicole, and that he "started poking her with it." As Everett and Nicole were "hustling and tussling," Stephanie awoke and tried to intervene. Mr. Everett swung his arm at her and stabbed her in the chest. He told the detectives that after being stabbed in the chest, Stephanie had gotten another knife and began to attack him. When asked how Nicole ended up with stab wounds in her back, Mr. Everett answered, "That's when she retreated." At some point, both Nicole and Stephanie fell to the floor, and Mr. Everett called 911.

{¶6} Mr. Everett recounted a similar version of events at trial. He testified that when Nicole grabbed the knife and told him she was going to stab him, he did not believe her because he had seen her threaten her ex-boyfriend with a knife and nothing had happened. By way of explaining the signs of asphyxia shown by Stephanie, he described how he had put her in a chokehold in an attempt to control her and get the knife away from her. One difference in his story was about how Nicole got stabbed in the back. In his interview with Detectives Grant and Sieving, he had said that Nicole was stabbed in the back as she was retreating. At trial, he explained that he had stabbed her in the back as she was facing him and then she turned to leave.

{¶7} The jury found Everett not guilty of the aggravated murder of Stephanie but guilty of voluntary manslaughter. It also found him guilty of the felony murder of Stephanie, the murder and felony murder of Nicole and tampering with evidence. Everett's defense counsel moved for a mistrial, arguing that the verdicts for voluntary manslaughter and murder were contradictory. The court denied the motion. The court merged the voluntary-manslaughter and murder counts related to Stephanie's death and the two murder counts related to Nicole's

4

death, and sentenced Everett for one count of murder of Stephanie, one count of murder of Nicole and one count of tampering.

## II. The Trial Court Properly Instructed the Jury on Self-Defense

{¶8}    In his first assignment of error, Mr. Everett contends that the trial court did not correctly instruct the jury on self-defense. He argues that the court's instructions did not make clear that he had no duty to retreat because he was attacked in his home, and that court did not tell the jury that he was presumed to have acted in self-defense. Because Everett did not object to the instructions, we review for plain error. *See State v. Underwood*, 3 Ohio St.3d 12, 444 N.E.2d 1332 (1983), syllabus. *See* Crim.R. 30(A); Crim.R. 52(B).

{¶9}    To establish self-defense, Mr. Everett needed to prove "(1) that [he] was not at fault in creating the situation giving rise to the affray; (2) that [he] had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force; and (3) that [he] did not violate any duty to retreat or avoid the danger." *State v. Barnes*, 94 Ohio St.3d 21, 24, 759 N.E.2d 1240 (2002). Under what's known as the "Castle Doctrine," a defendant has no duty to retreat from his own home. *State v. Williford*, 49 Ohio St.3d 247, 551 N.E.2d 1279 (1990), paragraph two of the syllabus; *see* R.C. 2901.09(B).

{¶10}    The court's instructions to the jury on the issue of self-defense were as follows:

> To establish a claim of self-defense, Brian Everett must prove by the greater weight of the evidence that (A) he was not at fault in creating the situation giving rise to the event in which death occurred; and (B) he had reasonable grounds to believe and an honest belief, even if mistaken,

that he was in imminent or immediate danger of death or great bodily harm, and that his only reasonable means of retreat, escape, or withdrawal from such danger was by the use of deadly force; and (C) he had not violated any duty to retreat, escape, or withdraw to avoid the danger.

The Defendant had a duty to retreat if he was at fault in creating the situation giving rise to the death or the Defendant did not have reasonable grounds to believe and an honest belief that he was in imminent or immediate danger of death or great bodily harm or he had a reasonable means of escape from that danger other than by use of deadly force. Brian Everett no longer had a duty to retreat if he retreated, escaped, or withdrew from the situation or reasonably indicated his intention to retreat, escape, or withdraw from the situation and no longer participate in it; and he had reasonable grounds to believe and an honest belief that he was in immediate or imminent danger of death or great bodily harm; and the only reasonable means of escape from that danger was by the use of deadly force, even though he was mistaken as to the existence of that danger.

If the defendant was assaulted in his home, the defendant had no duty to retreat, escape, or withdraw and could use such means as were necessary to repel the assailant from the home, even deadly force, provided he had reasonable grounds to believe and an honest belief that the use of deadly force was necessary to repel the assailant.

{¶11} Mr. Everett takes issue with the order in which the instructions were presented: the general instruction on the duty to retreat preceded the statement of the

Castle Doctrine. But we review jury instructions in their entirety, not in isolation. *See State v. Thompson*, 33 Ohio St.3d 1, 12-13, 514 N.E.2d 407 (1987). When read together, the instructions to the jury were not confusing.

{¶12} Mr. Everett also complains that the portion of the instruction about his duty to retreat did not include language from R.C. 2901.09(B). The instruction used by the court was an older version of the Ohio Jury Instructions. *See Ohio Jury Instructions*, CR Section 421.19(C) (Rev. Oct. 10, 2011). The newer version provides that "[a] person who lawfully is in his * * * residence has no duty to retreat before using force in self defense[.]" *Ohio Jury Instructions*, CR Section 421.19(D) (Rev. Oct. 10, 2011). While the updated language tracks more precisely the statute, the instruction used by the court was a correct statement of the law. Mr. Everett was not prejudiced by its use, particularly since there was no question that he was lawfully in his apartment at the time of the stabbings.

{¶13} Mr. Everett also insists that the jury should have been instructed that he was presumed to have acted in self-defense. Under R.C. 2901.05(B)(1), "a person is presumed to have acted in self defense * * * when using defensive force that is intended or likely to cause death or great bodily harm to another if the person against whom the defensive force is used is in the process of unlawfully and without privilege to do so entering, or has unlawfully and without privilege to do so entered, the residence * * * occupied by the person using the defensive force."

{¶14} Here, Nicole and Stephanie Smith did not "unlawfully and without privilege" enter Everett's apartment. Rather, as Mr. Everett testified, he invited them to stay with him because the electricity had been turned off in their apartment. Nonetheless, Mr. Everett maintains that once Nicole Smith attacked him, she became a trespasser and thus was unlawfully in his apartment. He likens the

situation to that in which an invitee becomes a trespasser for purposes of aggravated burglary. *See State v. Steffen*, 31 Ohio St.3d 111, 114-115, 509 N.E.2d 383 (1987). But the trespassing statute speaks to a defendant entering or *remaining* without privilege. *See* R.C. 2911.21(A). In contrast, R.C. 2901.05(B)(1) looks to the status of the person against whom force is used when she entered the building. Because the Smiths entered Everett's apartment lawfully, the R.C. 2901.05(B)(1) presumption doesn't apply. *See State v. Hogg*, 10th Dist. Franklin No. 11AP-50, 2011-Ohio-6454, ¶ 36.

{**¶15**}   Mr. Everett failed to demonstrate that the court erred when it instructed the jury on self-defense. The first assignment of error is overruled.

### III.  Counsel Was Not Ineffective

{**¶16**}   Continuing his protest of the jury instructions, Mr. Everett asserts that his counsel was ineffective because he did not object to the instructions on self-defense. But counsel was not deficient for failing to object to instructions that were a proper statement of the law regarding self-defense. *See State v. Wilson*, 3d Dist. Union No. 14-06-19, 2006-Ohio-6390, ¶ 52. And even if counsel had requested jury instructions that managed to more clearly explain Everett's duty to retreat, we are unable to conclude that the result of the trial would have been different. *See Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989). The second assignment of error is overruled.

### IV.  The Verdicts Were Not Inconsistent

{**¶17**}   Everett's third assignment of error is that the court erred when it did not grant his motion for a new trial based on inconsistent jury verdicts. In finding Everett guilty of voluntary manslaughter, the jury concluded that Everett had knowingly

caused Stephanie's death "while under the influence of sudden passion or in a sudden fit of rage, either of which [was] brought on by serious provocation occasioned by the victim that [was] reasonably sufficient to incite the person into using deadly force[.]" R.C. 2903.03(A). Mr. Everett contends that this finding is inconsistent the jury's finding that he had "cause[d] the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree[.]" R.C. 2903.02(B). Mr. Everett reasons that, if he was acting under the influence of sudden passion or in a sudden fit of rage, he would not have committed felonious assault but aggravated assault—a fourth-degree felony. *See* R.C. 2903.12(A).

{¶18} The seeming inconsistency between verdicts on two different counts is not a basis for reversal. "The several counts of an indictment containing more than one count are not interdependent and an inconsistency in a verdict does not arise out of inconsistent responses to different counts, but only arises out of inconsistent responses to the same count." *State v. Brown*, 12 Ohio St.3d 147, 465 N.E.2d 889 (1984), syllabus. *See Browning v. State*, 120 Ohio St. 62, 165 N.E. 566 (1929) ("A verdict responding to a designated count will be construed in the light of the count designated, and no other. An inconsistency in a verdict does not arise out of inconsistent responses to different counts, but only arises out of inconsistent responses to the same count."). Applying *Browning*, the Fifth Appellate District recently concluded that there was no inconsistency in a jury's verdicts that found the defendant guilty of the felony murder of a woman and the voluntary manslaughter of her unborn child, even though both deaths were caused by the same stab wounds. *See State v. Scott*, 5th Dist. Stark No. 2013CA00063, 2013-Ohio-5875.

{¶19} The same principle has been recognized by the United States Supreme Court. In *United States v. Powell*, 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984), the Ninth Circuit Court had reversed a defendant's convictions for using a telephone to facilitate a conspiracy to possess cocaine because the defendant had been acquitted of the underlying conspiracy. The United States Supreme Court reversed the circuit court, reasoning that "where truly inconsistent verdicts have been reached, '[the] most that can be said * * * is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt.' " *Powell* at 64-65, citing *Dunn v. United States*, 284 U.S. 390, 393, 52 S.Ct. 189, 76 L.Ed. 356 (1932). The court noted that "a criminal defendant already is afforded protection against jury irrationality or error by the independent review of the sufficiency of the evidence undertaken by trial and appellate courts." *Powell* at 67.

{¶20} This court undertook such an independent review when it considered apparently inconsistent verdicts in *State v. Carusone*, 1st Dist. Hamilton No. C-010681, 2003-Ohio-1018. There, the defendant had shot and killed a victim while feloniously assaulting a second victim. With respect to the first victim, the jury found the defendant guilty of both reckless homicide and involuntary manslaughter with an underlying offense of aggravated menacing. *Id.* at ¶ 7. This court noted that for the defendant to have been convicted of both offenses, he would have had to have (1) shot the victim while *knowingly* putting the other victim in fear of serious physical harm (involuntary manslaughter) and, at the same time, (2) shot the first victim while *perversely disregarding* a known risk (reckless homicide). *Id.* at 49. The court concluded that the mental states for the two crimes were incompatible. *Id.* at 50. But that apparent inconsistency was not the basis for our disposition of the

appeal. Rather, we determined that the state had not presented sufficient evidence to show that the second victim was in fear of serious physical harm, so we reversed the conviction for involuntary manslaughter and discharged the defendant on that count. *Id.* at 54.

{¶21} Everett's conviction is subject to the same review. He stands convicted of the felony murder of Stephanie. The voluntary-manslaughter count was merged by the court. Because the jury's findings were made in response to two separate counts, there was no inconsistency. And while Mr. Everett does not challenge whether the evidence was sufficient to support his conviction for the felony murder of Stephanie, he does contend that the conviction was against the weight of the evidence. We consider this argument below. The third assignment of error is overruled.

## V. There was Sufficient Evidence of Tampering and the Convictions were not Against the Weight of the Evidence.

{¶22} We consider Everett's remaining assignments of error together. In the fourth, he asserts that his conviction for tampering with the evidence was not supported by sufficient evidence, and in the fifth, he argues that the tampering conviction was against the manifest weight of the evidence. In the sixth, he maintains that the murder convictions were against the weight of the evidence.

{¶23} The tampering statute requires a showing that the defendant "[a]lter[ed], destroy[ed], conceal[ed], or remove[d] any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation[.]" R.C. 2921.12(A)(1). The state presented evidence that Everett had removed one of the knives used in the stabbing from the family room and that he had wiped the knife down with a cloth. This evidence was sufficient for the jury to infer

that Everett had sought to impair the evidentiary value of the knife. *See State v. Smith*, 12th Dist. Warren No. CA2010-05-047, 2011-Ohio-1476.

{¶24} Mr. Everett also argues that the tampering conviction and the murder convictions were against the manifest weight of the evidence. He insists that his self-defense claim was credible and that, because he had acted in self-defense, there was no reason for him to try to tamper with evidence. The jury, however, was in the best position to determine the credibility of evidence, particularly with regard to witness testimony. *See State v. Bryan*, 101 Ohio St.3d 272, 2004-Ohio-971, 804 N.E.2d 433, ¶ 116; *State v. Williams*, 1st Dist. Hamilton Nos. C-060631 and C-060668, 2007-Ohio-5577, ¶ 45. Based upon our review of the record—including a weighing of the evidence and all reasonable inferences, and consideration of the credibility of the witnesses—we cannot conclude that the jury so clearly lost its way as to create a manifest miscarriage of justice. *See State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). It is difficult, if not impossible, to reconcile Everett's self-defense claim with the physical evidence that both victims were stabbed in the back. The fourth, fifth and sixth assignments of error are overruled.

{¶25} We therefore affirm the judgment of the trial court.

Judgment affirmed.

**MOCK** and **STAUTBERG, JJ.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.