OPINION JUDGMENT ENTRY
{¶ 1} Appellant Paul M. Fraley appeals from his conviction for robbery in the Court of Common Pleas, Perry County. The relevant facts leading to this appeal are as follows.
 {¶ 2} In 1999, Pearl Jewitt of Logan, Ohio, underwent heart surgery. Jewitt, an eighty year-old man, met Dixie Owens, who began assisting him with household chores and other basic care. Jewitt eventually began providing financial assistance to Owens, and over the next few years bought her several used cars. Jewitt had also purchased a trailer for Owens to live in.
 {¶ 3} On October 13, 2002, Owens contacted Jewitt and asked him to rent a motel room for her. Jewitt picked her up and took her to the VIP Motel in New Lexington, Ohio. After Jewitt made arrangements for the room, he volunteered to go to a nearby Kroger store to get her some groceries and personal items. Owens later testified that Jewitt asked her to have sex with him, which she refused. Jewitt denied ever having a sexual relationship with Owens.
 {¶ 4} After Jewitt left the motel room for the store, Owens called Appellant Fraley, her paramour, and asked him to come to over. When appellant arrived, he and Owens drove in appellant's Pontiac Sunbird to the Kroger store. The two waited in the car until Jewitt exited the store, and then they drove back to the VIP Motel ahead of him. According to Owens, appellant got out of the car and returned a few minutes later with Jewitt's wallet in his hand, Owens testified that she asked appellant: "You didn't do what I think you did?" Tr. at 157. Owens recalled that appellant stated: "Yes I did. I did do that." Id.
 {¶ 5} Jewitt recalled returning to the motel room after the Kroger trip, only to find no one present. He proceeded toward the motel office to drop off the groceries, when he was struck across his neck and upper back area and knocked to the ground near the back steps. The assailant, whose face Jewitt never saw during the attack, placed his knee in Jewitt's back and struck him two or three more times. The assailant took his wallet, containing credit cards and about $200 in cash, and ran around to the other side of the building.
 {¶ 6} On that evening, Elmer Rose and his wife Dawn Rose were guests of the VIP Motel. Mr. Rose testified that he saw a blue Sunbird or Cavalier in the parking lot with Owens reclining in the passenger seat, "acting funny." Tr. at 196. Mr. Rose saw a man near the car, and then saw the same man, which he identified as appellant, hurriedly moving from behind the motel back to the car. Mr. Rose then watched appellant and Owens depart in the car. Dawn Rose also saw a blue car with a woman inside and a man outside, "acting weird." Tr. at 189.
 {¶ 7} Another guest, Michael Fondale, testified that he saw appellant standing near the rear of the motel that evening, "looking like they [sic] were waiting for someone." Tr. at 207.
 {¶ 8} After the assault occurred, appellant and Owens drove around the countryside for several hours. According to Owens, appellant counted the money and eventually discarded the wallet and its remaining contents along the road. The pair returned to the VIP at about 5 A.M., but parked on a nearby street and walked to the motel room. Owens testified that she and appellant then had sex. Shortly thereafter, New Lexington Police Officers Jim Dodd and Anne Craig knocked on the door. Owens allowed the officers inside. Appellant attempted to hide in the bathroom, but soon fled on foot.
 {¶ 9} On October 24, 2001, appellant was indicted by the Perry County Grand Jury of one count of robbery and one count of theft. Appellant pled not guilty, and the matter proceeded to a jury trial May 1, 2002. Following the presentation of evidence, the jury returned a verdict of not guilty on the charge of theft, but guilty on the charge of robbery, a felony of the second degree. Appellant was subsequently sentenced to five years in prison. On July 22, 2003, upon appellant's motion, this Court granted leave to file a delayed appeal. Appellant herein raises the following sole Assignment of Error:
 {¶ 10} "I. Mr. fraley's conviction is against the manifest weight of the evidence.
 I. {¶ 11} In his sole Assignment of Error, appellant argues that his conviction is against the manifest weight of the evidence. We disagree.
 {¶ 12} Our standard of review on a manifest weight challenge to a criminal conviction is stated as follows: "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717. See also, State v. Thompkins (1997),78 Ohio St.3d 380, 678 N.E.2d 541. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175,485 N.E.2d 717.
 {¶ 13} Appellant first notes that the jurors would have had to rely on both Owens' and Jewitt's testimony to convict, but contends that at least one of these two witnesses had to have been lying about the nature of their relationship: Jewitt stated several times at trial that he had never sought a sexual relationship with Owens; Owens nonetheless testified that Jewitt had frequently propositioned her for sex and that he used Viagra. Tr. At 181. Appellant also attacks the credibility of Owens' claim that she and appellant drove around for five to six hours after the assault without stopping for gas. Appellant also contrasts Owens' refusal to call the police, due to her claimed fear of appellant, with her admission of having sex with him after their return to the hotel. Appellant likewise critiques Jewitt as a biased victim and witness, pointing out that Jewitt admitted to finding Owens and appellant in bed together on an earlier occasion, when he went to see, perhaps jealously, if she was sexually involved with another man while he effectively was paying her rent. See Tr. at 118-199.
 {¶ 14} Appellant secondly challenges the consistency of the verdict results. He notes that the not guilty verdict to theft must mean that the jurors justified a robbery conviction on the grounds that appellant simply attempted a theft offense. See R.C.2911.02(A). However, he concedes that the evidence would lead a rational fact finder to the conclusion that a theft offense had been committed, not just "attempted," assuming the jurors believed Jewitt's testimony that his wallet was taken. Appellant therefore posits that the juror's conclusions were illogical in finding that robbery had occurred.
 {¶ 15} Nonetheless, we have reviewed the record in the case of sub judice, including the testimony of all the witnesses called by the state, and we are unpersuaded by appellant's contention that the jury's verdict led to a manifest miscarriage of justice. As we have often emphasized, the triers of fact, as opposed to this Court, are in a far better position to weigh the credibility of witnesses. State v. DeHass (1967),10 Ohio St.2d 230,227 N.E.2d 212. A jury is free to believe all, part, or none of the testimony of each witness who appeared before it. Statev. Caldwell (1992), 79 Ohio App.3d 667. An inconsistent verdict may very well be a result of leniency and compromise by the jurors, rather than being caused by confusion. See, e.g., UnitedStates v. Powell (1984), 469 U.S. 57.
 {¶ 16} We hold the jury's verdict was not against the manifest weight of the evidence, and we therefore refrain from reversing the robbery conviction against appellant.
 {¶ 17} Appellant's sole Assignment of Error is overruled.
 {¶ 18} For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Perry County, Ohio, is hereby affirmed.
Wise, J., Gwin, P.J., and Edwards, J., concur.
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Perry County, Ohio, is affirmed.
Costs to appellant.