[Cite as *State v. Tapscott*, 2012-Ohio-4213.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | ) | CASE NO. 11 MA 26 |
| | ) | |
| PLAINTIFF-APPELLEE | ) | |
| | ) | |
| VS. | ) | O P I N I O N |
| | ) | |
| ALLEN TAPSCOTT | ) | |
| | ) | |
| DEFENDANT-APPELLANT | ) | |

CHARACTER OF PROCEEDINGS:        Criminal Appeal from the Court of
                                 Common Pleas, Mahoning County, Ohio
                                 Case No. 10 CR 1267

JUDGMENT:                        Convictions Affirmed.
                                 Remanded for Resentencing.

APPEARANCES:
For Plaintiff-Appellee:          Atty. Paul Gains
                                 Prosecuting attorney
                                 Atty. Ralph Rivera
                                 Assistant Prosecuting Attorney
                                 21 West Boardman Street, 6th Floor
                                 Youngstown, Ohio 44503

For Defendant-Appellant:         Atty. Rhys B. Cartwright-Jones
                                 42 N. Phelps Street
                                 Youngstown, Ohio 44503-1130

JUDGES:
Hon. Joseph J. Vukovich
Hon. Gene Donofrio
Hon. Cheryl L. Waite

                                 Dated: September 14, 2012

[Cite as *State v. Tapscott*, 2012-Ohio-4213.]
VUKOVICH, J.

**{¶1}** Defendant-appellant Allen Tapscott appeals from the judgment of the Mahoning County Common Pleas Court which sentenced him after a jury found him guilty of aggravated burglary and two counts of aggravated robbery. He argues on appeal that he was prejudiced by the admission of testimony that the female victim was pregnant and that her pregnancy was high-risk. He also urges that the two counts of aggravated robbery, one for each victim, should have been merged. For the following reasons, these arguments are overruled, and his convictions are upheld.

**{¶2}** However, we find a plain error in the trial court's decision to sentence appellant concurrently on offenses that the court merged as a merged offense receives no sentence. Consequently, we remand for resentencing where the state can elect the offenses that will receive sentences.

## STATEMENT OF THE CASE

**{¶3}** As a result of a reported home invasion at the Westlake Terrace Apartments, appellant was indicted on two counts of aggravated robbery with a deadly weapon, one count of aggravated burglary with a deadly weapon, three firearm specifications, and one count of having a firearm while under disability. The last count was severed for a bench trial to take place after a jury trial on the first three counts.

**{¶4}** At the jury trial, the male victim testified that he was at his girlfriend's apartment at the Westlake projects on November 1, 2010 at 6:50 p.m. when he heard noises at the front door (which had been barricaded) and then heard someone say,

"get the money, I know he has money." (Tr. 258). At that point, appellant entered by way of the back door. The victims knew appellant through the neighborhood and because the female victim had helped appellant set up a Facebook page a few days before. (Tr. 257, 309).

{¶5} The male victim stated that appellant pointed a gun at the female victim and said he "was going to shoot her, kill my kid, kill me." (Tr. 255). According to the victim, appellant demanded pills and money. The male victim replied that he could have the pills on the counter (which were prenatal vitamins) and that he had money at the neighbor's apartment. Appellant then allowed the female victim to leave to retrieve the money. The male victim testified that appellant ransacked the apartment while pointing the gun at him and threatened to hit him in the head with the gun if the female did not return. (Tr. 255, 260). It was reported that appellant took $40 cash and a $200 money order and then left when he heard sirens. (Tr. 260, 295).

{¶6} The female victim confirmed that appellant entered through the back door, pointed a gun at her, threatened to kill her and the male victim, and asked for pills and money. (Tr. 304, 306). She also heard someone instruct appellant to get the money. (Tr. 307-308). She related that when appellant allowed her to leave, she went to the neighbor's apartment and called the police. (Tr. 308). This neighbor confirmed that the female victim, who was crying and upset, asked to use his telephone because her boyfriend was being robbed. (Tr. 351).

{¶7} A police officer testified that when they encountered the male victim he had been following appellant to see whether he entered another apartment. The victim appeared frantic and seemed relieved to see the police. (Tr. 368). The officer

confirmed that the apartment had been ransacked, noting that he saw a computer and electronic equipment on the floor. (Tr. 373). The officer stated that the victims immediately began making plans to move from the apartment that night. (Tr. 374). The officer also testified that the female victim seemed very scared when she returned to pack her belongings. (Tr. 377).

**{¶8}** Appellant then testified in his own defense. Appellant stated that the male victim had been looking for a gun for his brother. Appellant asked around and was able to procure one that he knew did not work. (Tr. 514-515). Appellant stated that on October 29, 2010, he arrived at the male victim's apartment with the gun. He related that the victim called his brother, and when the brother arrived, appellant sold him the gun for $120. (Tr. 517-518). The female victim then helped appellant set up a Facebook page. (Tr. 519).

**{¶9}** Appellant said that the male victim called him on October 30 to say that his brother wanted his money back because the gun did not work. (Tr. 520). Appellant testified that he originally agreed to refund the money when he was able to, but when the male victim kept calling him, he told him that he would not be refunding the money, which upset the male victim. (Tr. 520). Appellant then related that when he went to the apartment complex on October 31, the male victim wanted to fight him, and so, they nearly engaged in a knife fight in front of a group of people at the projects. (Tr. 521-522). He said he was back at the complex on November 1 (the day of the reported incident) and that he saw the female victim outside but did not speak to her and did not enter their apartment or rob them. (Tr. 525).

**{¶10}** The jury found appellant guilty on all three counts with firearm specifications. The court thereafter found him guilty of the weapons under disability charge. In a January 28, 2011 entry, the court sentenced appellant to ten years on the first three offenses, three years on each firearm specification, and five years on the weapons under disability charge. The court merged the firearm specifications into one specification. The court also held that the aggravated burglary would merge with aggravated robberies and ran those sentences concurrently. The court refused appellant's request to merge the two aggravated robberies as well and ran these sentences consecutively to each other, to the sentence on the specification, and to the weapons sentence, for a total of twenty-eight years. The within appeal followed.

<u>ASSIGNMENT OF ERROR NUMBER ONE</u>

**{¶11}** Appellant's first assignment of error provides:

THE TRIAL COURT ERRED IN ALLOWING IN EVIDENCE OF THE ALLEGED VICTIM'S 'HIGH RISK' PREGNANCY IN CONTRAVENTION OF RULES 401, 402, AND 403 OF THE OHIO RULES OF EVIDENCE, WHICH PROSCRIBE ADMISSION OF IRRELEVANT AND PREJUDICIAL EVIDENCE.

**{¶12}** Appellant complains here about various places in the testimony where the jury was informed that the victim was in the midst of a high-risk pregnancy at the time of the offense. The jury was not informed that within days of the offense, she gave birth and the baby died. It was this latter fact that the defense asked to be excluded in their written motion in limine where they asked the court to prohibit the

state from introducing evidence of the female victim's medical condition *after* the robbery.

**{¶13}** In discussing this motion before trial, the prosecutor asked for guidance on how to proceed and noted that the victim's condition helped emphasize her credibility. (Tr. 8-9). The court agreed that the death of the baby was not pertinent but opined that the fact of pregnancy seemed unavoidable. (Tr. 10-12). The court suggested that the state stick to the elements of the offenses and pointed out that certain facts may become pertinent depending upon cross-examination. (Tr. 10-11).

**{¶14}** The male victim testified first. When the prosecutor asked if he lived in the apartment with his girlfriend, he answered: "I was staying with her. She was going through a high-risk pregnancy and she needed me there with her at all times." (Tr. 252-253). When asked who was home during the incident, the male victim added to his answer, "She was laying on the couch. Like I said, she was a high-risk pregnancy and she wasn't allowed to do nothing." (Tr. 254). As aforementioned, he also testified that appellant "said he was going to shoot her, kill my kid, kill me." (Tr. 255).

**{¶15}** Thereafter, when the prosecutor asked the female victim who lived with her at the apartment, she answered, "It was myself, but I was going through a high-risk pregnancy so my boyfriend was there with me." (Tr. 302). The prosecutor asked how far along she was at the time to which she responded that she had been five months pregnant. (Tr. 302-303). The prosecutor then inquired, "And as far as being a high-risk pregnancy, what orders did you have from the doctor?" She replied, "I

was supposed to be on bedrest * * *  I had to take two medicines for my contractions * * *." (Tr. 303).

**{¶16}** The responding officer testified in pertinent part:  "He was upset.  He stated several times that he was very scared for his life as well as his girlfriend's life.  His girlfriend was pregnant at the time.  He immediately began to make plans of moving out of the apartment."  (Tr. 374).  When asked to describe the female victim's demeanor, the officer responded in part, "she was scared for her life and her pregnancy.  I guess she had mentioned it was high risk and, you know, it was a very stressful situation for her to be in."  (Tr. 377).

**{¶17}** Appellant first claims that all of this testimony about a high-risk pregnancy was not relevant and thus was inadmissible under Evid.R. 401 and 402.  Appellant alternatively argues that even if the evidence was relevant, it should have been excluded under Evid.R 403(A) or (B).

**{¶18}** Initially, it must be pointed out that the defense's written motion in limine did not ask for exclusion of evidence of a high-risk pregnancy.  That is, the motion specifically asked to exclude evidence of the victim's medical condition *after* the offense, not before or during the offense.  Accordingly, the trial court agreed that the death of the baby should not be discussed, and it was not in fact discussed at trial.  The court did not prohibit testimony on the pregnancy and in fact noted that such testimony appeared unavoidable.  Thus, contrary to appellant's suggestion, he did not file a motion in limine on the topic of pregnancy, and the court did not rule to exclude such evidence.

**{¶19}** In any event, a motion in limine does not preserve an issue. A motion in limine is a preliminary, precautionary, tentative, and anticipatory ruling on the potential treatment of an issue to be later resolved when it arises in the context of the trial where the trial court may change its mind based upon circumstances that are developed. *State v. Grubb*, 28 Ohio St.3d 199, 201-203, 503 N.E.2d 142 (1986). A party's failure to reassert the matter at the proper point at trial constitutes a waiver of any challenge, regardless of the disposition made for a preliminary motion in limine. *Id.* at 203.

**{¶20}** As the defense did not object to any of the mentions of pregnancy during the testimony, the issue was waived. *See id.; State v. Hancock*, 108 Ohio St.3d 57, 2006-Ohio-160, 840 N.E.2d 1032, ¶ 59 (objecting party must challenge evidence during trial when issue is presented in full context ). *See also* Evid.R. 103(A)(1) (error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected and a timely objection was made specifically stating the grounds of the objection).

**{¶21}** Where no objection is entered at a time when the error can be corrected, the court may recognize plain error if substantial rights are affected. *See* Crim.R. 52(B). Plain error is a discretionary doctrine to be used with the utmost of care by the appellate court only in exceptional circumstances in order to avoid a manifest miscarriage of justice. *State v. Noling*, 98 Ohio St.3d 44, 2002-Ohio-7044, ¶ 62. The doctrine can be employed only where there was an obvious error affecting substantial rights in that the error was clearly outcome determinative. *Id.; Hancock*, 108 Ohio St.3d 57 at ¶ 60.

**{¶22}** However, there is no error here, plain or otherwise. The admission or exclusion of relevant evidence rests within the sound discretion of the trial court. *State v. Sage*, 31 Ohio St.3d 173, 180, 510 N.E.2d 343 (1987). It is within the sound discretion of the trial court to apply its common experience and logic to determine the relevance of evidence. *State v. Lyles*, 42 Ohio St.3d 98, 99-100, 537 N.E.2d 221 (1989).

**{¶23}** Contrary to appellant's position, the relevancy test does not require the evidence to directly prove an element of the offense. Relevant evidence is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. Relevant evidence is admissible unless prohibited by another rule, statute, the constitution. Evid.R. 402. Evidence which is not relevant is not admissible. Evid.R. 402.

**{¶24}** The fact that the victim was pregnant was admissible to explain appellant's own declaration that he "was going to shoot her, kill my kid, kill me." (Tr. 255). Appellant's brief seems to acknowledge this as it focuses on the testimony disclosing that the pregnancy was high-risk. However, this fact is also relevant for various reasons.

**{¶25}** Whether the victim's story about appellant entering her apartment with a firearm and robbing them is true is a "fact that is of consequence" to the action. *See* Evid.R. 401. The fact that she was in the midst of this high-risk pregnancy has "a tendency" to make it less likely that she would entangle herself in this police investigation and engage in the actions taken that evening. *See id.* As the state

points out, a female subjected to bedrest for a high-risk pregnancy while taking two medications to stop early contractions would not typically leave her apartment when the baby's father was present, walk to a neighbor's residence five doors down, and call 911 to report a robbery unless that robbery was actually occurring. Her state of being on bedrest also makes it less likely that she would thereafter pack her belongings and leave the apartment if the robbery never occurred. The neighbor's testimony confirmed that she came over to call the police, and the police officer's testimony confirmed that she packed items in order to stay elsewhere that night and that the apartment had been ransacked.

{¶26} The jury is entitled to all information that might bear on the accuracy and truth of a witness's testimony. *United States v. Abel*, 469 U.S. 45, 52, 105 S.Ct. 465, 83 L.2d 450 (1984) (dealing with witness bias). The credibility of a witness is always a relevant issue. *State v. Curry*, 11th Dist. No. 92-A-1738 (June 30, 1993); *State v. Lumpkin*, 2d Dist. No. 90CA82 (Oct. 25, 1991). *See also State v. Oddi*, 5th Dist. No. 02CAA01005, 2002-Ohio-5926, ¶ 32. The evidence contested here makes it more probable that the victim is telling the truth. *See State v. Jackson*, 107 Ohio St.3d 53, 2005-Ohio-5981, 836 N.E.2d 1173, ¶ 70.

{¶27} Furthermore, the fact of pregnancy and even that it was high-risk was admissible to explain the pill bottles in the apartment which contained the female victim's prenatal vitamins and two medications prescribed to stop contractions. This is relevant background information regarding how appellant may have seen the prescription pill bottles in the apartment when he was there getting assistance with his Facebook page a few days before and regarding why he immediately asked for

the pills when he broke into the house. For all of these reasons, the evidence regarding the victim's high-risk pregnancy passed the test for relevancy pursuant to Evid.R. 401 and 402.

**{¶28}** Pursuant to Evid.R. 403(A), there is a mandatory exclusion of relevant evidence whose probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury. Moreover, the trial court has discretion to exclude relevant evidence whose probative value is substantially outweighed by considerations of undue delay, or needless presentation of cumulative evidence. Evid.R. 403(B).

**{¶29}** Initially, it should be reiterated that no one informed the jury that the victim went into labor shortly after the offense or that she lost the baby. Nor did anyone suggest that the victim gave birth prematurely as a result of the stressful situation and her inability to abide by strict bed rest that evening.

**{¶30}** As aforementioned the high-risk pregnancy was relevant to the victims' credibility as to whether the offense occurred and as background for the pill bottles in the apartment. The victims' credibility was key here. This is especially true since the defense revolved around a claim that the victims ransacked their own apartment and made up the story of the burglary and robbery in retaliation for appellant selling the male victim's brother a broken gun for $120. Thus, contrary to appellant's argument, the probative value of the testimony was not minimal.

**{¶31}** Generally, all evidence presented by the prosecution is prejudicial to the criminal defendant, and as the rule speaks only to prejudice that is unfair, there is a preference for admissibility. *See State v. Skatzes*, 104 Ohio St.3d 195, 2004-Ohio-

6391, 819 N.E.2d 215, ¶ 107; *State v. Frazier*, 73 Ohio St.3d 323, 333, 652 N.E.2d 1000 (1995). The issues were straightforward in this case; nothing confusing was presented. The case dealt with victims claiming robbery and burglary versus a defendant claiming that he was falsely accused due to the male victim's desire to avenge his brother's loss of $120 due to the purchase of a broken gun. Therefore, had an objection been lodged at trial, the trial court would not have abused its discretion in determining that the probative value of the high-risk pregnancy was not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. *See* Evid.R. 403(A).

{¶32} As for Evid.R. 403(B), the probative value of the testimony that her pregnancy was high-risk was not substantially outweighed by undue delay or the needless presentation of cumulative evidence. The evidence on this topic was abbreviated, was not needlessly cumulative, and caused no delay. As such, this assignment of error is overruled.

<u>ASSIGNMENT OF ERROR NUMBER TWO</u>

{¶33} Appellant's second assignment of error contends:

THE TRIAL COURT ERRED IN NOT MERGING MR. TAPSCOTT'S SENTENCES FOR AGGRAVATED ROBBERY AGAINST TWO ALLEGED VICTIMS.

{¶34} Appellant argues that the two aggravated robberies should be merged. Appellant contends that the mere existence of two victims does not automatically result in sentences for two offenses. He states that a defendant must commit the offenses separately against each victim in order to be sentenced on both.

{¶35} Pursuant to R.C. 2941.25:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶36} Under the old analysis for evaluating whether offenses are allied offenses of similar import or offenses of dissimilar import, the court was to compare the elements of the offenses in the abstract (without considering the defendant's conduct) to determine whether the elements corresponded to such a degree that the commission of one offense would result in the commission of the other offense. *State v. Cabrales*, 118 Ohio St.3d 54, 2008-Ohio-1625, 886 N.E.2d 181, ¶ 14; *State v. Rance*, 85 Ohio St.3d 632, 710 N.E.2d 699 (1999). If they were of dissimilar import, sentencing could proceed on both; if they were allied offenses of similar import, the court proceeded to look at the defendant's conduct to determine whether they were committed separately or with separate animus. *Cabrales*, 118 Ohio St.3d 54 at ¶14, 31; *State v. Jones*, 78 Ohio St.3d 12, 14, 676 N.E.2d 80 (1997).

**{¶37}** Now, however, courts are permitted to consider the defendant's conduct in determining whether the offenses are of similar import. *State v. Johnson*, 128 Ohio St.3d 153, 2010–Ohio–6314, 942 N.E.2d 1061, syllabus. All six justices that sat on *Johnson* agreed with the following syllabus law: "When determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25, the conduct of the accused must be considered. (*State v. Rance* (1999), 85 Ohio St.3d 632, 710 N.E.2d 699, overruled.)" *Johnson*, 128 Ohio St.3d at syllabus. Besides this statement, *Johnson* did not provide us any new legal precedent as there was no majority opinion. See *State v. Gardner*, 7th Dist. No. 10MA52, 2011–Ohio–2644, ¶ 23.

**{¶38}** We begin by noting that appellant relies on case law that is neither binding nor on point. For instance, appellant cites to a dog neglect case, which neither involved human victims nor actions as neglect is the absence of action. *See State v. Bybee*, 134 Ohio App.3d 395, 731 N.E.2d 232 (1999). That court specified that the neglect was one course of conduct and there did not exist sufficient separate conduct to allow sentencing on each offense. *Id.* at 401.

**{¶39}** In another case, a defendant robbed a store with three employees, and he was charged with one offense per employee. *State v. Howard*, 1st Dist. No. C-020389, 2003-Ohio-1365. The court stated that it was well-settled that when an offender robs different victims of different property in a short period of time, he can be convicted of each robbery because there is a separate animus for each offense, i.e., a separate victim. *Id.* at ¶ 15. The court concluded that the defendant should only be sentenced on one robbery because his intent was to rob the store, there were not

separate acts separated by time or conduct, and he did not attempt to steal from the three employees. *Id.* at ¶ 14-15. Thus, this holding does not support appellant's position here.

**{¶40}** Appellant also cites a case explaining that aggravated robbery charges against multiple victims would not merge because the defendant took property from each victim by threat and thus with a separate animus. *State v. Smith*, 8th Dist. No. 95243, 2011-Ohio-3051, ¶ 79. Appellant apparently focuses on the following statement in the *Smith* case: "This is not similar to a fact pattern where an individual fires a gun into a crowd of people, which arguably could create allied offenses of similar import in the event the offender is charged with multiple counts of felonious assault for each victim." *Id.*, citing *State v. Sutton*, 8th Dist. No. 90172, 2011–Ohio–2249. However, the latter fact pattern is distinguishable from our case, and that court used the word "arguably." Finally, regarding appellant's attempts to use the dicta or reverse inference of these cases, the specific conduct occurring in a particular case is relevant at every step of the analysis and every case has different levels of conduct toward each victim.

**{¶41}** The Ohio Supreme Court has stated that multiple sentences for a single act committed against multiple victims is permissible where the offense is defined in terms of conduct toward "another" as such offenses are of dissimilar import; the import being each person affected. *State v. Jones*, 18 Ohio St.3d 116, 118, 480 N.E.2d 408 (1985). Thus, a person can be sentenced on a count of aggravated vehicular homicide for each victim killed because the offense is defined in terms of recklessly causing the death "of another." *Id.* Similarly, a person who set one fire to

a structure could be sentenced for six counts of aggravated arson, one for each victim, because arson was defined in terms of creating a substantial risk of serious harm to another person. *State v. Franklin*, 97 Ohio St.3d 1, 2002-Ohio-5304, 776 N.E.2d 26, ¶ 48.

**{¶42}** Appellant was charged with aggravated robbery for attempting, committing, or fleeing after committing a theft offense while having a deadly weapon on or about his person or under his control and either displaying, brandishing, indicating possession, or using that weapon. See R.C. 2911.01(A)(1). Appellant was not charged with the type of aggravated robbery involving the inflicting or attempting to inflict serious physical harm "on another." See R.C. 2911.01(A)(3). Still, in order for the defendant to display, brandish, indicate possession of, or use a weapon, he would have done so to the person he is robbing; thus, the offense is essentially defined in terms of conduct toward another. Moreover, theft is an element of aggravated robbery, and theft involves the taking of property from "another." *See* R.C. 2911.01(A), citing R.C. 2913.01, citing R.C. 2913.02 (property of another). *See also State v. Snuffer*, 8th Dist. Nos. 96480, 96481, 96482, 96483, 2011-Ohio-6430, ¶ 4 (applying *Jones* to theft offenses). In accordance, under the *Jones* and *Franklin* analysis, the court was permitted to sentence appellant for one aggravated robbery per victim.

**{¶43}** Additionally, *Jones* and *Franklin* involved one act by the defendant that happened to affect two victims. *The case before us involves various acts purposely aimed at two victims.* And, we are now permitted to view these acts in the first step of the analysis.

**{¶44}** Moreover, finding offenses to be of dissimilar import is merely one way to sentence on both offenses. *See* R.C. 2941.25(B). If the conduct results in two or more offenses of the same or similar kind committed separately or with separate animus to each, sentencing can also proceed on both. *Id.*

**{¶45}** In this case, circumstantial evidence showed that appellant knew he would be robbing both of these particular victims before he even entered the apartment. And, he engaged in various acts toward each victim. He first pointed his weapon at the female. He then threatened to kill both victims. When neither could produce money, he ordered the female to leave the apartment to retrieve money held by the neighbor while holding the male victim in the apartment. He pointed the gun at the male victim during this time and threatened to hit him in the head with the gun. He stole items from the apartment that belonged to both victims during this time: the money order for the rent on the female's apartment and $40 belonging to the male victim. In fact, aggravated robbery only requires *attempting* to commit theft while having and displaying the deadly weapon; it does not require actual theft, and appellant attempted to deprive both victims of pills and more money.

**{¶46}** In conclusion, appellant knew he would be approaching two victims, each victim was threatened, a gun was pointed at each at different times, the victims were collectively asked for money and pills, and each was subjected to a different consequence (the male held hostage while the female was instructed to leave the apartment to retrieve money). Considering all of appellant's conduct here, the offenses were not allied offenses of similar import as the different victim makes them

of dissimilar import and/or that they were committed separately or with separate animus to each. Consequently, appellant's argument here is overruled.

**{¶47}** There is another issue we shall address here that is not raised by appellant. The trial court merged the firearm specifications so that only one remained for sentencing and merged the aggravated burglary with the aggravated robberies so that only the robberies remained for sentencing.[1] Although the trial court merged these offenses, the court still entered sentences on all offenses, apparently believing that merger is satisfied by running the sentences on the merged offenses concurrently.

**{¶48}** However, when a court merges offenses, it cannot run the sentences for the merged offenses concurrently. Rather, the court must refrain from entering a sentence on one of the merged offenses. "Sentencing concurrently on merged counts does not satisfy the merger doctrine as no sentence at all should be entered on one of the two merged counts." *State v. Gardner*, 7th Dist. No. 10 MA 52, 2011-Ohio-2644, ¶ 24, citing *State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182, at ¶ 17.

**{¶49}** Failure to merge allied offenses of similar import constitutes plain error even where a defendant's sentences are run concurrently because "a defendant is prejudiced by having more convictions than are authorized by law." *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, ¶ 31 (plain error

---

[1] The propriety of these mergers was not contested by the state on appeal. *See* App.R. 5 (on seeking leave to appeal); RC. 2945.67(A) (appeal by state). In fact, the state clearly acknowledged the necessity of merging the firearm specifications. (Tr. 10). And, the state admitted that the trial court was permitted to merge the aggravated burglary with the aggravated robberies if it so wished. (Tr. 9-10).

even where it is a jointly recommended sentence), citing *State v. Yarbrough*, 104 Ohio St.3d 1, 2004-Ohio-6087, 817 N.E.2d 845, ¶ 96–102.

{¶50} Cases such as this are remanded for a limited resentencing hearing so that the prosecution can select which of the merged offenses it wishes the court to enter a conviction and sentence the defendant on. *State v. Whitfield*, 124 Ohio St.3d 319 at ¶ 21-22 (finding that appellate court impermissibly intruded on the state's right to elect by ordering which offense to vacate); *Maumee v. Geiger*, 45 Ohio St.2d 238, 244, 74 O.O.2d 380, 344 N.E.2d 133 (1976).

{¶51} In accordance, we remand for the prosecution to select whether it wishes the defendant to be sentenced on the two aggravated robberies but not the aggravated burglary or on the aggravated burglary and one of the aggravated robbery counts. We note that the firearm specifications were all the same and just generally merged into one specification negating the need for an election regarding the specifications on remand. Still, the trial court is instructed to correct its sentence on the specifications so that a sentence is only pronounced on one firearm specification (as opposed to pronouncing sentence on all three and running them concurrently).

{¶52} Convictions affirmed. Sentence reversed in part for resentencing.

Donofrio, J., concurs.

Waite, P.J., concurs.