[Cite as *State v. Scott*, **2013-Ohio-5875.**]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

STATE OF OHIO

      Plaintiff-Appellee

-vs-

JAWANZA SCOTT

      Defendant-Appellant

JUDGES:
Hon. W. Scott Gwin, P.J.
Hon. William B. Hoffman, J.
Hon. Patricia A. Delaney, J.

Case No. 2013CA00063

O P I N I O N

CHARACTER OF PROCEEDING:      Appeal from the Stark County Court of
Common Pleas, Case No. 2012CR1597

JUDGMENT:      Affirmed

DATE OF JUDGMENT ENTRY:      December 31, 2013

APPEARANCES:

For Plaintiff-Appellee

For Defendant-Appellant

JOHN D. FERRERO
Prosecuting Attorney,
Stark County, Ohio

By: RONALD MARK CALDWELL
Assistant Prosecuting Attorney
Appellate Section
110 Central Plaza, South – Suite 510
Canton, Ohio 44702-1413

EARLE E. WISE, JR.
122 Central Plaza, North
Canton, Ohio 44702

*Hoffman, P.J.*

{¶1} Defendant-appellant Jawanza Scott appeals his conviction and sentence entered by the Stark County Court of Common Pleas. Plaintiff-appellee is the state of Ohio.

STATEMENT OF THE FACTS AND PROCEDURAL HISTORY

{¶2} In the late evening hours of October 7, 2012, Alliance City Police Officers responded to a call phoned in by a neighbor to 42 East Columbia Avenue, Apartment 6, Alliance, Ohio. The neighbor reported loud voices, bumping, and fighting.

{¶3} After knocking on the door of the residence, hearing a commotion and screaming, the officers kicked open the door to the residence. The officers found Angela Lewis in a fetal position on the kitchen floor covered in blood. Appellant was behind Lewis, with his left arm around her and his right arm raised above her, hand in a fist. Upon approach of the officers, Appellant rolled off of Lewis into a seated position, dropped a knife and put his hands in the air.

{¶4} The officers observed Lewis had severe stab wounds to her neck and was unresponsive. Lewis was found to be 8 weeks pregnant with Appellant's child. However, there was conflicting testimony at trial as to whether Appellant was aware Lewis was pregnant. Responding paramedics pronounced Lewis dead at the scene, and her pregnancy terminated.

{¶5} Following an autopsy, Lewis' blood alcohol level was found to be 0.24. Lewis suffered twenty-six wounds to her person, including blunt force trauma and defensive wounds to her hand and forearm.

**{¶6}** Following a jury trial, Appellant was convicted on Count One of murder, in violation of R.C. 2903.02(B), for purposely causing the death of Angela Lewis as a proximate result of committing a felonious assault by means of a deadly weapon, to wit: a knife. Count One also contained a repeat violent offender specification, pursuant to R.C. 2941.149.

**{¶7}** On Count Two, Appellant was convicted of voluntary manslaughter, in violation of R.C. 2903.02(A), for the unlawful termination of Angela Lewis' pregnancy. Count Two also contained a repeat violent offender specification, pursuant to R.C. 2941.1493.

**{¶8}** The trial court sentenced Appellant to 15 years to life on Count One. The court sentenced Appellant to 10 years in prison on the repeat violent offender specification attached to Count One. The court ordered the 15 years to life sentence for Count One run consecutively with the 10-year sentence on the specification for a total prison term of 25 years to life on Count One.

**{¶9}** On Count Two, the trial court sentenced Appellant to 11 years on the voluntary manslaughter charge. The court imposed a 10-year sentence on the repeat violent offender specification as to Count Two. Further, the court imposed an additional 1,031 days of sentence enhancement due to Appellant's post-release control status at the time the offense was committed. The court ordered the 11-year sentence run consecutive to the 10-year sentence for the repeat violent offender specification and additional time for the PRC violation. Accordingly, the total prison term on Count Two amounted to 21 years plus the 1,031 additional days.

{¶10} Finally, the trial court ordered the sentences imposed on Count One and Count Two run consecutive to each other.

{¶11} Appellant now appeals, assigning as error:

{¶12} "I. THE TRIAL COURT ERRED IN FAILING TO MERGE THE TWO COUNTS OF THE INDICTMENT AS WELL AS THE REPEAT VIOLENT OFFENDER SPECIFICATIONS (RVO SPECS), IN VIOLATION OF APPELLANT'S RIGHTS AGAINST DOUBLE JEOPARDY UNDER THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION, AND IN VIOLATION OF R.C. 2941.25.

{¶13} "II. THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S MOTION FOR ACQUITAL [SIC] OF COUNT ONE BASED UPON THE VERDICTS RETURN [SIC] BY THE JURY BEING INCONSISTENT OR IN THE ALTERNATIVE TO SET ASIDE THE VERDICTS AS INCONSISTENT IN VIOLATOIN [SIC] OF APPELLANT'S RIGHT TO DUE PROCESS OF LAW UNDER THE FIFTH AND FOURTEENTH AMENDMENTS OF THE CONSTITUTION OF THE UNITED STATES.

{¶14} "III. THE EVIDENCE PRESENTED AT TRIAL IS INSUFFICIENT TO SUSTAIN THE CONVICTIONS AND THE VERDICTS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIENCE [SIC].

{¶15} "IV. THE TRIAL COURT ERRED BY SENTENCING APPELLANT TO 1,031 DAYS OF POST-RELEASE CONTROL (PRC) TIME BASED UPON ISSUFICIENT [SIC] EVIDENCE AS TO THE AMOUNT OF DAYS APPELLANT HAD REMAINING ON PRC."

I.

**{¶16}** In the first assignment of error, Appellant maintains the trial court erred in failing to merge counts one and two as allied offenses of similar import.

**{¶17}** R.C. 2941.25 reads,

**{¶18}** "(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

**{¶19}** "(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."

**{¶20}** The Ohio Supreme Court has established a two-step test to determine whether offenses are allied offenses of similar import under R.C. 2941.25(A). First, we must examine "whether it is possible to commit one offense and commit the other with the same conduct." *State v. Johnson,* 128 Ohio St.3d 153, 2010–Ohio–6314, 942 N.E.2d 1061, ¶ 48. If the answer is yes, we must then determine "whether the offenses were committed by the same conduct, i.e., 'a single act, committed with a single state of mind.' " *Id.* at ¶ 49, 942 N.E.2d 1061, quoting *State v. Brown,* 119 Ohio St.3d 447, 2008–Ohio–4569, 895 N.E.2d 149, ¶ 50 (Lanzinger, J., dissenting).

**{¶21}** The case subjudice involved two separate victims, Angela Lewis and her unborn fetus. The Eighth District Court of Appeals recently addressed the issue of

merger involving multiple victims in *State v. Rogers*, 994 N.E.2d. 499, 2013-Ohio-3235, holding,

**{¶22}** "In CR–553806, the two counts of receiving stolen property in the indictment revealed property taken from two distinct victims from two separate houses apparently taken during burglaries that occurred the same day. Rogers argued on appeal that these acts were identical, so they should have been merged at sentencing.

**{¶23}** "Even without facts to analyze Rogers's conduct, we can determine from the face of these convictions that these offenses were not subject to merger. A review of the elements of the receiving stolen property charges shows an offender must have "receive[d], retain[ed], or disposed of *property of another,* knowing or having reasonable cause to believe that it has been obtained through commission of a theft offense." (Emphasis added.) R.C. 2913.51.

**{¶24}** "Separate victims alone established a separate animus for each offense. Even if the defendant cannot distinguish one victim's goods from another's does not mean his conduct did not impact multiple victims. Each victim has a specific and identifiable right to redress against the conduct of the defendant. The defendant's conduct in receiving goods he knows to be stolen inherently implies that they may be from multiple owners or locations. '[M]ultiple sentences for a single act committed against multiple victims is permissible where the offense is defined in terms of conduct toward 'another as such offenses are of dissimilar import; the import being each person affected.' " *State v. Tapscott,* 2012-Ohio-4213, 978 N.E.2d 210, quoting *State v. Jones,* 18 Ohio St.3d 116, 118, 480 N.E.2d 408 (1985). *See also State v. Franklin,* 97 Ohio

St.3d 1, 2002-Ohio-5304, 776 N.E.2d 26, ¶ 48; *State v. Phillips,* 8th Dist. No. 98487, 2013-Ohio-1443, 2013 WL 1461997, ¶ 8–10."

**{¶25}** In *State v. Cutts*, Fifth Dist. Stark App. No. 2008CA000079, 2009-Ohio-3563, this Court held,

**{¶26}** "We thus reach the remaining question of whether the convictions of the murder of Davis and the aggravated murder of her unborn child are allied offenses of similar import.

**{¶27}** "Generally, where a defendant commits a crime against two victims, each offense is necessarily committed with a separate animus. See, e.g., *State v. Scheutzman,* Athens App.No. 07CA22, 2008-Ohio-6096, ¶ 12; *State v. Luce* (Dec. 12, 1980), Lucas App.No. L-79-317, 1980 WL 351657. We recognize in the case sub judice that the death of the unborn child resulted from maternal death. However, as we discussed in Appellant's second assigned error, the evidence demonstrated Appellant's complete failure to take any measures to save the unborn child following the fatal injuries to Davis. Therefore, separate animus existed between the murder offense (Davis) and the aggravated murder offense (the unborn child), and we find no reversible error in the trial court's decision not to merge said offenses for sentencing purposes."

**{¶28}** Appellant was convicted of murder for purposely causing "the death of another" and voluntary manslaughter for the termination of the pregnancy under a fit of passion or rage. As the offenses of murder and voluntary manslaughter each involved separate victims, we do not find the trial court erred in sentencing Appellant on both.[1]

**{¶29}** The first assignment of error is overruled.

---

[1] We also find there was sufficient evidence to support a finding a separate animus existed as to the death of both victims

II.

**{¶30}** In the second assignment of error, Appellant maintains the trial court erred in denying his motion for acquittal on Count One based upon the verdicts returned by the jury being inconsistent, or in the alternative to set aside the verdicts as inconsistent.

**{¶31}** Generally, "[i]nconsistency in a verdict does not arise out of inconsistent responses to different counts, but rather inconsistent responses to the same count." *State v. Gardner,* Montgomery App. No. 21027, 2006-Ohio-1130, ¶ 33, citing *State v. Adams* (1978), 53 Ohio St.2d 223, 374 N.E.2d 137; *State v. Lovejoy* (1997), 79 Ohio St.3d 440, 683 N.E.2d 1112. Furthermore, an inconsistent verdict may very well be a result of leniency and compromise by the jurors, rather than being caused by jury confusion. *State v. Fraley,* Perry App.No. 03CA12, 2004-Ohio-4898, ¶ 15, citing *United States v. Powell* (1984), 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461. See, also, *State v. Ballard,* Cuyahoga App.No. 88279, 2007-Ohio-4017, ¶ 17.

**{¶32}** In this case, the jury returned a split verdict finding Appellant guilty of murder with regard to the death of Lewis, and guilty of the lesser-included offense of voluntary manslaughter for the death of the unborn child.

**{¶33}** In *State v. Adams* (1978), 53 Ohio St.2d 223, the Ohio Supreme Court held,

**{¶34}** "The general rule as to inconsistency in a verdict as between different counts of an indictment is expressed in the annotation in 18 A.L.R.3d 259, at page 274, where it is stated that '* * * consistency between the verdicts on the several counts of an indictment * * * is unnecessary where defendant is convicted on one or some counts but

acquitted on others, and the conviction will generally be upheld irrespective of its rational incompatibility with the acquittal.'

{¶35} "The rule in Ohio, as expressed in Griffin v. State (1868), 18 Ohio St. 438; Browning v. State (1929), 120 Ohio St. 62, 165 N.E. 566; and State v. McNicol (1944), 143 Ohio St. 39, 53 N.E.2d 808, is stated in paragraph four of the syllabus in Browning, as follows:

{¶36} " 'The several counts of an indictment containing more than one count are not interdependent. A verdict responding to a designated count will be construed in the light of the count designated, and no other. An inconsistency in a verdict does not arise out of inconsistent responses to different counts, but only arises out of inconsistent responses to the same count.'"

{¶37} Based upon the above, we find the jury verdicts as to the different counts of murder and voluntary manslaughter are not inconsistent.  For a similar analysis and result, see *Cutts*, supra.

{¶38} The second assignment of error is overruled.

III.

{¶39} In the third assignment of error, Appellant maintains his convictions are against the manifest weight and sufficiency of the evidence.

{¶40} Our review of the constitutional sufficiency of evidence to support a criminal conviction is governed by *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), which requires a court of appeals to determine whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable

doubt." *Id.;* see also *McDaniel v. Brown,* 558 U.S. 120, 130 S.Ct. 665, 673, 175 L.Ed.2d 582(2010) (reaffirming this standard); *State v. Fry,* 125 Ohio St.3d 163, 926 N.E.2d 1239, 2010–Ohio–1017, ¶ 146; *State v. Clay,* 187 Ohio App.3d 633, 933 N.E.2d 296, 2010–Ohio–2720, ¶ 68.

**{¶41}** Weight of the evidence addresses the evidence's effect of inducing belief. *State v. Thompkins,* 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith,* 80 Ohio St .3d 89, 684 N.E.2d 668, 1997–Ohio–355. Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." (Emphasis sic.) *Id.* at 387, 678 N.E.2d 541, quoting Black's Law Dictionary (6th Ed.1990) at 1594.

**{¶42}** When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a " 'thirteenth juror' " and disagrees with the fact finder's resolution of the conflicting testimony. *Id.* at 387, 678 N.E.2d 541, quoting *Tibbs v. Florida,* 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). However, an appellate court may not merely substitute its view for that of the jury, but must find that " 'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *State v. Thompkins,* supra, 78 Ohio St.3d at 387, quoting *State v.*

*Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721(1st Dist.1983). Accordingly, reversal on manifest weight grounds is reserved for " 'the exceptional case in which the evidence weighs heavily against the conviction.' " *Id.*

**{¶43}** Appellant was convicted of murder for causing the death of another while committing an offense of violence, here felonious assault.

**{¶44}** R.C. 2903.02 provides,

**{¶45}** "(A) No person shall purposely cause the death of another or the unlawful termination of another's pregnancy.

**{¶46}** "(B) No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit an offense of violence that is a felony of the first or second degree and that is not a violation of section 2903.03 or 2903.04 of the Revised Code."

**{¶47}** R.C. 2903.11(A)(1)(2), defines felonious assault as,

**{¶48}** "(A) No person shall knowingly do either of the following:

**{¶49}** "(1) Cause serious physical harm to another or to another's unborn;

**{¶50}** "(2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance."

**{¶51}** As to the termination of Angela Lewis' pregnancy and the death of the unborn child, Appellant was convicted of voluntary manslaughter, which is defined in R.C. 2903.03(A),

**{¶52}** "(A) No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall

knowingly cause the death of another or the unlawful termination of another's pregnancy."

{¶53} The evidence presented at trial demonstrates the officers responded to the call phoned in by a neighbor reporting loud voices, bumping and fighting. Upon knocking on the door to the residence, the officers heard a commotion and screaming. The officers kicked open the door to the residence, finding Angela Lewis in a fetal position covered in blood. Appellant had one arm around Lewis and one arm raised in the air, with a fist. Upon the officers' approach, Appellant moved away from Lewis and dropped a knife to the ground. The officers observed numerous stab wounds to Lewis' neck and found her unresponsive. Lewis was pronounced dead at the scene, and her eight-week pregnancy terminated, resulting in the death of an unborn child. Following a jury trial, Appellant was convicted of murder and voluntary manslaughter. It is for the jury, as the trier of fact, to weigh the evidence and judge the credibility of the witnesses.

{¶54} Based upon the evidence presented at trial, we find Appellant's convictions were supported by the manifest weight and sufficiency of the evidence.

{¶55} The third assignment of error is overruled.

IV.

{¶56} In the fourth assignment of error, Appellant maintains the trial court erred in sentencing him to an additional 1,031 days of post-release control time based upon insufficient evidence as to the amount of days Appellant had remaining as to the terms of his sanction.

{¶57} Upon our review, we find the record presented is insufficient to affirmatively demonstrate the alleged error. Appellant did not request an evidentiary

hearing, did not object to the calculation at the time of sentencing, and has not pointed to evidence in the record demonstrating error in the calculation.

{¶58} Accordingly, the fourth assignment of error is overruled.

{¶59} Appellant's convictions and sentences in the Stark County Court of Common Pleas are affirmed.

By: Hoffman, J.

Gwin, P.J. and

Delaney, J. concur

_____
HON. WILLIAM B. HOFFMAN


_____
HON. W. SCOTT GWIN


_____
HON. PATRICIA A. DELANEY

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| JAWANZA SCOTT | : | |
| | : | |
| Defendant-Appellant | : | Case No. 2013CA00063 |

For the reasons stated in our accompanying Opinion, Appellant's convictions and sentences in the Stark County Court of Common Pleas are affirmed. Costs to Appellant.

_____
HON. WILLIAM B. HOFFMAN

_____
HON. W. SCOTT GWIN

_____
HON. PATRICIA A. DELANEY